DAVID DAYWOOD V. STATE.

No. 25,756. March 26, 1952.
Rehearing Denied May 7, 1952.

Hon. J. Harris Gardner, Judge Presiding.

*Paul T. Holt*, and *J. J. Brady, Jr.*, Austin, for appellant.

*Bob Long*, District Attorney, *Thomas D. Blackwell*, Assistant District Attorney, and *George P. Blackburn*, State's Attorney, all of Austin, for the state.

MORRISON, Judge.

The offense is indecent fondling of a minor; the punishment, five years.

Mrs. Mayer, a widow and mother of the injured child, testified that, on the day charged in the indictment, she had left her seven-year-old daughter at the house of Mrs. Voigt, a baby sitter; that, at the close of the day, she and her gentleman friend went to the house of the baby sitter to retrieve her daughter; found her being dressed; and that shortly thereafter they left with the child. Mrs. Mayer testified further that, after they had driven less than a block, the child grabbed herself between her legs and said, "That man hurt me so bad"; whereupon, they immediately returned to the house from which they had just left and were met by appellant, who was in the process of leaving; and that the child said, "That is him"; that she and her male companion accosted appellant; and the entire group

re-entered the baby sitter's house, where she questioned appellant about molesting her daughter, which he denied. Mrs. Mayer testified that she, her companion, the appellant and her child went to the hospital, where an examination was made of the child and where appellant was arrested.

Dr. Glynn testified that he examined the child on such occasion and found three small abrasions just to the left of the vagina inside the sexual part of the child, on each of which he found at least a drop of fresh blood, and that, in his judgment, the injuries could not have been more than an hour or two old and could have been caused by a fingernail.

Mr. Brack, Mrs. Mayer's companion, testified and corroborated her testimony, and stated that the child had repeated her accusations against appellant in his presence immediately upon their return to the baby sitter's house.

It was established by the testimony of peace officers that the underpants worn by the Mayer child had thereon stains of human blood and were not torn.

The injured child testified that, on the night in question, at a time when the baby sitter had gone to the bathroom, the appellant spit on his finger and put it in her private part several times, which caused her to hurt. Under cross-examination, she denied that she had fallen during her tree climbing earlier in the day.

The eight-year old son of the baby sitter testified that, during the course of his play with the Mayer girl during the day in question, she had fallen and straddled the limb of a tree. On cross-examination by the state, the boy testified that, while his mother was out of the room, appellant came over and sat on the side of the bed, patted the Mayer girl on the back, which caused the child to whimper and whine; and that his mother, upon her return to the room, asked the child what was the matter; and the Mayer girl had told her that appellant had fooled with her.

Mrs. Voigt, the baby sitter, testified that she had been keeping company with appellant for some time, and that appellant was at her house on a visit on the night in question, and denied that appellant had in any way molested the Mayer child, and supported her son's account of the fall from the tree.

Appellant testified that, on the night in question, he had left his wife at a picture show and had gone to visit Mrs. Voigt,

denied that he had molested the Mayer girl, and stated that thirty minutes had elapsed between the departure and the return to Mrs. Voigt's house of the Mayer party, and admitted that he had called Mrs. Voigt immediately upon being released under bond at 10:00 a.m. Monday morning.

The state called a detective in rebuttal, who testified that, on Monday morning, he had gone to the home of Mrs. Voigt, in the course of his investigation, and she had told him certain incriminating facts against appellant and agreed to sign a statement containing them; but that, when he contacted her again about noon, she refused to sign any statement at all.

We find the evidence sufficient to support the verdict.

We shall attempt to discuss appellant's bills of exception in the order advanced in this court as grounds for reversal.

Bill of exception No. 2 complains of the court's failure to charge on aggravated assault. At this juncture, it will be noted that, merely because a lesser offense is included within the proof of a greater offense, a charge on the lesser is not required unless there is testimony raising the issue that the appellant, if guilty at all, is guilty only of a lesser offense included in the greater offense charged. We here observe that the record contains no evidence raising the issue of aggravated assault. We proceed, however, to discuss appellant's contention in this respect. He contends that, since the assault in question necessarily inflicted disgrace upon the injured party, then the case came within the terms of Subdivision 5 of Article 1147, P.C., and he was entitled to have the jury charged on the primary offense and also on aggravated assault.

In order to understand appellant's contention, it is necessary to observe the following:

The 51st Legislature enacted the indecent fondling statute, now Article 535d, Penal Code.

The same legislature re-enacted Article 1147, Penal Code, as amended, to read, in part, as follows:

"An assault or battery becomes aggravated when committed under any of the following circumstances: * * *

"(9) When committed by an adult male upon the person of a female or child or by an adult female upon the person of a child.

"This sub-section (9) of Section 1 shall not apply to the act of a person who fondles the sexual parts or places, or attempts to place his or her hand or hands upon or against the sexual parts of a male or female under the age of fourteen (14) years, or who fondles or attempts to fondle, or places or attempts to place his or her hand, or hands, or any part of his or her hands upon the breast of a female under the age of fourteen (14) years, which acts are elsewhere made unlawful."

Sub-section (5) now reads:

"When the instrument or means is such as inflicts disgrace upon the person assaulted, as an assault or battery with a whip or cowhide."

In connection with Subdivision (5), we find no provision such as that following Subdivision (9).

Article 694, C. C. P., provides.

"In a prosecution for an offense including lower offenses, the jury may find the defendant not guilty of the higher offense, but guilty of any lower offense included."

Article 695, C. C. P., enumerates offenses which include different degrees.

We have held Article 695 not to be exclusive if every constituent element of the lesser offense be *alleged* in the indictment and if there is no repugnancy between the constituent elements of the lesser offense and those of the offense charged. Tomlin v. State, 155 Tex. Cr. R. 207, 233 S. W. (2d) 303.

We now apply this test to Subdivision (5) above and to the indecent fondling charge against appellant.

A very constituent element of a violation of subdivision (5) is the infliction of disgrace.

The indecent fondling charge has no *allegation* of the infliction of disgrace, nor is lack of consent an element. In fact, we have held, in Jones v. State, 156 Texas Crim. Rep. 2, 238 S. W. (2d) 529, that the effect upon the person assaulted is immaterial and that the gravamen of the offense is the intent of the person committing the assault.

We therefore conclude that, since all of the essential elements of the offense denounced in Subdivision (5) of Article 1147 are not *alleged* in the instant indictment, the offense of aggravated assault is not included as a lesser offense.

Bill of Exception No. 10 reflects that officer Rosen had been called by the state in rebuttal and gave testimony in conflict with that given by Mrs. Voigt, a defense witness, concerning certain conversations he had with her out of the presence of the appellant. Upon objection being made, the district attorney stated that the sole purpose of the testimony was to impeach the witness Voigt.

At the close of the testimony of officer Rosen, the court instructed the jury orally as follows:

"Gentlemen of the jury, the testimony of Mr. Rosen relating to the statements made by Mrs. Voigt are permitted to come before you solely for the purpose of impeaching the testimony of Mrs. Voigt, if you find it does so impeach the testimony, but you must not consider said testimony in any way in connection with establishing the guilt or innocence of the defendant."

We are unable to agree with appellant's present contention that the court's instruction constituted a comment upon the weight of the testimony. The qualification as to the impeaching nature of the statement attributed by this witness to Mrs. Voigt "if you find it does so impeach the testimony" distinguishes the instant case from that of Wilson v. State, 140 Tex. Cr. R. 424, 145 S. W. (2d) 890, and McDonald v. State, 149 Tex. Cr. R. 21, 193 S. W. (2d) 216, cited by appellant.

Nor do we find that the language used may be construed as assuming that the statement testified as having been made by Mrs. Voigt was, in fact, made. The trial judge's reference was to "the testimony of Mr. Rosen relating to the statement made by Mrs. Voigt" and not to "statements made by Mrs. Voigt."

The objection made at the time was upon another ground.

Apellant moved the court to grant a mistrial on the grounds "that the Court attempted to give an instruction to the jury without having first presented said charge to the defendant for his observation, instruction and criticism, and said instruction of the court was an oral instruction of the court given to the jury contrary to the law provided." The court then withdrew

such instruction and told them that he would cover the matter in his written charge, which we find that he did in paragraph VI thereof, to which we find no objection. .

Since there was no objection to the instruction when it was finally given to the jury, if in fact ground for objection existed, we are not prepared to say that the oral instruction so given and withdrawn should constitute reversible error.

Appellant next complains of the overruling of his motion for instructed verdict on the ground that allegations of the indictment had not been proven. It had been alleged that appellant had placed his hand against the sexual part of the injured child; to-wit, the vulva. We do not believe that any averment other than "the sexual part" was necessary; but, having been alleged, it was required to be proven. We find that this was done by the testimony of the doctor, who stated that he found injury to the vulva, which might have been caused by a fingernail.

Bills of Exception 7, 8 and 9 deal with the cross-examination of appellant and Mrs. Voigt concerning their relationship one to the other; such as how many times appellant had been to see Mrs. Voigt, what was his purpose in going, what was the nature of his business there, and whether or not Mrs. Voigt knew the appellant was married at the time she permitted such visits. The objection was that the question was asked solely for the purpose of putting into the case by innuendo an extraneous crime.

Appellant cites us a number of authorities which hold the proof of extraneous crimes inadmissible. We think that the questions here propounded were proper, since the witness Mrs. Voigt had testified to facts material to appellant's defense; and it then became proper for the state to show, if it could, that the witness was biased in favor of the accused.

While there is no showing here of illicit conduct between the parties involved, we find the rule to be as stated in 58 American Jurisprudence, Section 720, page 388, "for the purpose of showing bias a witness in a criminal. prosecution is properly subject to cross-examination concerning any illicit relations with the defendant * * *. It may be shown not only that the relationship existed at the time of the commission of the crime, but also that such relationship existed afterward."

In Sexton v. State, 48 Tex. Cr. R. 497, 88 S. W. 348, we said:

"Nellie Carnes was a witness for appellant. On cross-examination she was permitted to testify 'that she had lived in adultery with defendant for five or six years'. Exception was reserved. The bill is signed with the qualification 'that the testimony was offered to show the relation witness bore to defendant, to show her motive and bias in his favor'. While the same witness was further testifying on cross-examination, she was asked if she did not know defendant had a living wife and child while she was living with him in adultery. She answered, 'Yes; I did not exactly know it, but I heard it and believed it.' Exception was reserved to this testimony. The bill is explained by the court; 'That the evidence was offered and admitted for the purpose of showing the close and intimate relationship between defendant and witness, and to show her natural bias as a witness, and her close attachment to and affection for defendant, as touching her credibility as a witness.' The same witness was also asked if she had not visited defendant in jail. This was admitted, as stated by the court, to show her motive and bias in the case, her attachment for the defendant, and as touching her credibility as a witness. We are of the opinion that, as explained by the court, this testimony was all admissible; and we think it was relevant for the purpose of showing her bias and friendship and close relationship to appellant, and her interest in testifying in his behalf, and consequently as touching her credibility."

It was proper for the state to seek further to establish the witness' bias in favor of appellant by subsequent questioning him on the same matter.

Bill of Exception No. 11 relates to argument by the district attorney concerning the giving of a suspended sentence. The effect of the court's qualification is that such argument was in answer to argument of appellant's counsel. Error in argument does not lie in going beyond the court's charge, but lies in stating law contrary to the same. We do not find such here. The portion of the argument in which it was stated that a suspended sentence was no punishment is not shown to have been objected to at any time.

Bills of Exception Nos. 5 and 6 complain of the admission in evidence of the statement made by the injured party. "That man hurt me so bad," made as they drove away from the baby

sitter's house and not in the presence of the appellant. Appellant contends that such statement was not a part of the res gestae and was not a sudden outcry. With this contention, we are not in accord. It is shown that they had driven approximately one-half block when the statement was made and that this was the first time the injured party had seen her mother since the commission of the offense. In Jones v. State, 156 Tex. Cr. R. 2, 238 S. W. (2d) 529, in an indecent fondling case, we authorized the receipt in evidence of a report made by the injured child to her mother upon being re-united with her following the commission of the offense. It will be further noted that the witness Brack testified that the child appeared nervous, upset and excited at the time such statement was made.

Appellant last complains of the failure of the trial court to define the word "lust," as used in the charge. We note that the court charged the jury, as was done in the Jones case, supra, "that the word 'lascivious', as used in this charge, means an unlawful indulgence in lust, tending to deprave the morals of the child."

The word "lust" has no meaning in law different from that in common usage and, therefore, requires no definition in the charge. In this connection, it will be observed that "lust" is not defined as a legal term in either Bouvier's Law Dictionary or Words and Phrases.

Finding no reversible error, the judgment of the trial court is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant insists that he was entitled to have the issue of aggravated assault submitted not only as an affirmative defense but as an included offense with that charged in the indictment.

By the so-called indecent fondling statute (Art. 535d, Vernon's P. C.), the legislature created a new and independent offense out of the general subject of offenses against morals.

The construction to be given to the exception to Sec. 9 of the aggravated assault statute (Art. 1147, P. C., as amended) is that the legislature intended that Art. 535d, Vernon's P. C.,

should control over other statutes in cases of fondling of the sexual parts of a female under the age of fourteen years.

As so construed, the aggravated assault statute has no application under the instant facts.

The motion for rehearing is overruled.

Opinion approved by the court.