**Frank HALL, Jr., Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–82–225–CR.**

Court of Appeals of Texas,
Fort Worth.

Dec. 28, 1983.

Robert C. Roe, Fort Worth, for appellant.

Tim Curry, Dist. Atty. and Chris Marshall, Asst. Dist. Atty., Fort Worth, for the State.

Before HUGHES, ASHWORTH and SPURLOCK, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

Appellant, Frank Hall, Jr., was convicted by a jury of murder and punishment was assessed at twenty-two years imprisonment. TEX.PENAL CODE ANN. § 19.02 (Vernon 1974).

We reverse and remand.

Hall does not challenge the sufficiency of the evidence. However, we will summarize the pertinent facts relating to Hall's two grounds of error, complaining that the trial court failed to permit Hall to impeach two eyewitnesses with evidence of their pending, unrelated felony indictments.

The record reflects that on January 15, 1982, Edward Chafer was fatally shot by someone who fired at him from a passing automobile. Robert Jordan and Velner Johnson were eyewitnesses to the shooting. Both testified at trial that Hall was driving the vehicle and that he shot Chafer.

Both witnesses gave written statements to the police on the day of the shooting. Each was subsequently indicted for a different, unrelated, felony offense. In his two grounds of error, Hall contends that the trial court erred in not allowing him to use the pending indictments to impeach witnesses Jordan and Johnson. Inasmuch as the witnesses' situations differ considerably, we will review and address them separately.

Jordan gave a written statement on the evening of the shooting. Jordan stated that he saw Hall stop the car at the scene of the shooting, and saw Hall lean over the man on the passenger's side of the vehicle and stick a chrome .357 pistol out the window toward Chafer. Jordan stated that he heard this gun click a couple of times and after a minute he saw Chafer lying on the ground. At trial, Jordan testified to essentially the same facts and observations that were in the written statement, but added that he actually saw the shots as they were fired by Hall. After the shooting, Jordan was indicted for the felony offense of cashing a forged check and theft. At the time of Hall's trial, Jordan had been incarcerated for seven months, awaiting the final disposition of his own case. At a pre-trial hearing, Hall's counsel sought to develop facts which would convince the trial court that Hall should be allowed to impeach Jordan with evidence of this pending indictment, contending that this was admissible to show the witness' bias.

The testimony elicited at this hearing indicates that both the prosecutor and Jordan's court-appointed attorney testified that no plea bargain had even been discussed in Jordan's pending felony case. Jordan testified that he had previously been brought from the jail into the courtroom where the prosecutor and court investigator talked with him, without his attorney being present. However, he stated that this discussion was limited to ascertaining his willingness to testify in the instant case. No mention was made regarding leniency or plea bargaining in his pending felony case, which had been transferred to the same court as Hall's case. The Chief Prosecutor acknowledged that this transfer was accomplished as a result of his being informed that Jordan was an eyewitness against Hall. There was a question raised by Hall as to whether the State was intentionally postponing Jordan's trial until after the witness testified against Hall. Jordan himself admitted, in response to defense questioning, that the thought had crossed his mind that the State would give him some consideration in his pending case if he cooperated with the District Attorney's office. Jordan emphasized, however, that he had always anticipated testifying against Hall, inasmuch as the father of the deceased was a close friend of his. Jordan gave his sworn, written statement to the police on the day of the killing, which was well in advance of the commission of Jordan's forgery offense.

The second witness, Velner Johnson, presents a somewhat different situation. Johnson also was an eyewitness to the shooting, had been a close friend of the deceased, and gave a sworn statement to the police on the evening of the shooting. In that statement, Johnson specified that the driver of the automobile stuck a gun

out the window of the vehicle and fired a couple of shots. Johnson specifically mentioned that she did not get to see the driver of the car and, most importantly, that if she had been able to view the driver and had he been Hall, she would have immediately recognized him because she was very familiar with him. At trial, however, Johnson revised her version of these events, and testified that she had in fact been able to see the driver who fired the fatal shot, and that this person was Hall.

Hall sought to show, outside the presence of the jury, that Johnson's altered version of the shooting was a result of the fact that she had been subsequently indicted and incarcerated for the felony offense of possession of heroin, and that she was biased and possessed a motive to protect her own self-interest in testifying against him. Johnson testified that after she gave her written statement to the police department, Officer Brown informed her that Chafer had died, and she then orally informed the officer that she had indeed recognized the killer and that he was Hall. Officer Brown testified that Johnson had made this comment to him, but that it was prior to her giving the written statement. Johnson related that she she was brought down from the jail for the hearing in her pending felony case, the Assistant District Attorney questioned her about her written statement, whereupon she responded that contrary to her prior written statement, she had in fact seen Hall drive the car and shoot the deceased. When Johnson was asked at trial (outside the presence of the jury) by defense counsel whether she had previously told him that she thought the State would give her some extra consideration because she testified against Hall, Johnson admitted that she had made this statement.

■ TEX.CODE CRIM.PROC.ANN. art. 38.29 (Vernon 1979), provides that an indictment shall not be admissible to impeach a witness in a criminal case. This rule is subject to the well-established exception to art. 38.29, that great latitude is allowed the accused in showing any fact, including pending charges, which tend to establish ill-feeling, bias, motive, and animus on the part of any witness testifying against him. *Parker v. State*, 657 S.W.2d 137, 139 (Tex. Cr.App.1983).

■ A major reason underlying the Sixth Amendment's guarantee of confrontation is that a defendant charged with a crime should have an opportunity to cross-examine witnesses against him. *Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923, 928 (1965). Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974). In attacking a witness' credibility, a cross-examiner may attempt to reveal possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case. *Davis, supra*, 415 U.S. at 316, 94 S.Ct. 1105, at 1110, 39 L.Ed.2d at 354. The partiality of a witness is always subject to exploration at trial and the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Davis, supra*. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise a witness' testimony. *Alford v. United States*, 282 U.S. 687, 690, 51 S.Ct. 218, 219, 75 L.Ed. 624, 628 (1931).

■ In deciding whether pending indictments or charges may be used to attempt to impeach a witness, we observe that the indictments themselves do not show bias, but only serve as a circumstance from which bias may be inferred. The question then becomes whether in addition to the indictment, there are other surrounding circumstances from which bias can reasonably be inferred. *Mutscher v. State*, 514 S.W.2d 905, 921 (Tex.Cr.App.1974).

■ Eliciting an admission that the witness has been accused of or incarcerated for a crime may be pertinent to show that his testimony was biased because given under

promise or expectation of immunity, or under the coercive effect of his detention by officers of the government who are conducting the present prosecution. *Alford,* 282 U.S. at 693, 51 S.Ct. at 220.

"Even if the witness were charged with some other offense by the prosecuting authorities, petitioner was entitled to show by cross-examination that his testimony was affected by fear or favor growing out of his detention." *Id.*

There are numerous cases holding that evidence of a witness' pending charge is admissible to establish a basis for an inference of undue pressure on the witness, showing facts that would tend to establish ill-feelings, bias, or motive upon the witness' part in testifying. *Davis v. Alaska, supra; Parker v. State, supra,* and cases cited therein.

The State contends that under the facts of this case, the trial judge's decision to exclude the evidence of the pending charges is defensible. In support of this contention, the State relies upon several cases which are not in point, inasmuch as in each of these cases appellants failed to offer proof to the trial court to show any connection between the charge pending against the witness and its possible bias. *See Moreno v. State,* 587 S.W.2d 405 (Tex.Cr.App.1979); *Garza v. State,* 532 S.W.2d 624 (Tex.Cr.App. 1976); *Smith v. State,* 516 S.W.2d 415 (Tex. Cr.App.1974); *Mutscher v. State, supra;* and *Rodriguez v. State,* 399 S.W.2d 818 (Tex.Cr.App.1966). In a footnote in *Moreno,* the court found that:

"The record reflects that Uranga [the witness] did not learn of the existence of the federal indictment until seven or eight days after he was held by the State as a material witness. At such time he had already given a sworn statement to the police outlining his version concerning how the offense was committed which was in substantial conformity with his later testimony at trial." *Moreno, supra,* at 411, fn. 8.

■ In the instant case, Hall went to great lengths to exhibit to the trial court that both Jordan and Johnson were biased because of their pending charges and their present incarceration. Both witnesses had given written statements prior to the commission of the alleged new offenses. We note that Jordan's trial testimony was in substantial conformity with his written statement, whereas a vital element of Johnson's trial testimony was completely different from her written statement.

Great latitude should be allowed the accused to show a witness' bias or motive to falsify his testimony. [Citations omitted.] However, trial courts have considerable discretion as to how and when bias may be proved and as to what collateral evidence is material for that purpose. [Citations omitted.] The extent to which a witness may be cross-examined for the purpose of showing bias on a collateral matter rests on the sound discretion of the trial judge. [Citations omitted.] *Hodge v. State,* 631 S.W.2d 754, 758 (Tex.Cr.App.1982)

In light of the foregoing rules and of the fact that Jordan's testimony regarding Hall's participation in the event in question was virtually identical to his written statement sworn to on the day of the murder, we hold that the trial court did not err in refusing to allow Hall to introduce evidence of Jordan's pending indictment. We therefore overrule ground of error one.

However, with regard to witness Johnson's testimony, the trial court should have allowed Hall to use evidence of Johnson's pending indictment to impeach her. Hall adequately, and in great detail, brought forth sufficient facts to show the trial court that Johnson's version of the events had altered between the time she gave her written statement and her testimony at trial. A legitimate concern was raised that she might be biased or acting under an expectation of leniency in her pending felony case. An inference the jury could have drawn was that Johnson had a personal interest in helping the prosecution prove its case against Hall, and therefore may have been an unreliable witness. While the jury may have chosen to reject such an inference, especially since Johnson had denied that she

was testifying for the State because of her vulnerable status, this material evidence was nevertheless admissible and Hall should have been permitted to prove these facts. *See Castro v. State,* 562 S.W.2d 252, 257 (Tex.Cr.App.1978).

We cannot speculate as to whether the jury would have accepted Hall's line of reasoning had he been permitted to fully present it. But we hold that the jurors were entitled to have the benefit of the defense's theory before them so that they could make an informed judgment as to the weight to place upon Johnson's testimony, which provided a crucial link in the proof of the State's case. *Davis, supra,* 415 U.S. at 317, 94 S.Ct. at 1111. Hall was denied the right of effective cross-examination, which is constitutional error of the first magnitude. No amount of showing of want of prejudice would cure it. *Davis, supra,* at 318, 94 S.Ct. at 1111. The State argues that any error, in view of the totality of the evidence, was harmless error beyond a reasonable doubt. We disagree, and sustain Hall's second ground of error. *See Parker, supra,* at 140–41; *Spain v. State,* 585 S.W.2d 705 (Tex.Cr.App.1979); *Evans v. State,* 519 S.W.2d 868, 873 (Tex.Cr.App. 1975).

We reverse and remand the case.