**Joyce LOGAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–82–01460–CR.**

Court of Appeals of Texas, Dallas.

Aug. 1, 1984.

Rehearing Denied Sept. 5, 1984.

Dissenting Opinion Sept. 21, 1984.

Douglas W. Skemp, Dallas, for appellant.

Joyce Ann Logan, pro se.

Henry Wade, Dist. Atty., Ruth Plagenhoef, Asst. Dist. Atty., Dallas, for appellee.

Before AKIN, CARVER and SHUMPERT, JJ.

AKIN, Justice.

This appeal is from a conviction of armed robbery for which the appellant was assessed a forty-five year sentence. Appellant contends that an allusion to homosexual activity between herself and an alibi witness by the prosecutor during argument at the guilt/innocence phase of trial was so prejudicial that the conviction must be reversed. We agree with the contention of the appellant. Accordingly, we reverse and remand.

The appellant called several witnesses who placed the appellant at a location several miles from the scene of the robbery at approximately the time the robbery occurred. During cross-examination of one of the alibi witnesses outside of the jury's presence, the witness was asked if she were the appellant's homosexual lover. The witness denied having a homosexual relationship with the appellant. The witness did, however, admit that she and her daughter had shared a three bedroom

house with the appellant and appellant's niece, whom she was rearing. During the five years appellant and the alibi witness shared the home, the children each occupied a bedroom and the appellant and the alibi witness shared a bedroom. The niece, who also testified, stated that appellant and the alibi witness "had a room together." After the cross-examination outside the presence of the jury, the trial judge instructed the prosecutor not to go into any homosexual relationship between the appellant and her witnesses before the jury. This instruction to the prosecutor was obeyed during subsequent examinations of the alibi witness before the jury.

While arguing at the guilt/innocence phase that the alibi witness' testimony was not credible, the prosecutor stated:

> What is the relationship between those two women, folks? They were roommates for five or six years. Mr. Hight chooses in his own words to characterize it as an "economic unit," a "family." Of course the two of them were sleeping together those five years.

Appellant immediately objected to the suggestion that she and the alibi witness were sleeping together. This objection was sustained and the jury instructed to disregard the statement. A motion for mistrial was overruled.

In our view the prosecutor's statement that the appellant and witness were "sleeping together" clearly connotes sexual activity. Our conclusion that the prosecutor intended to imply that the two individuals had a sexual relationship is bolstered by the fact that the prosecutor had just referred to them as roommates. We can see no reason for the prosecutor reemphasizing the sleeping arrangements of the two women unless he was trying to imply that they had a relationship which went beyond merely being roommates.

■ The four established areas of jury argument are: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answers to argument of opposing counsel; and (4) a plea for law enforcement. *Denison v. State*, 651 S.W.2d 754, 761 (Tex.Crim.App.1983); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App.1973). The basis of appellant's contention is that the prosecutor's argument injected a fact not in evidence. She contends that there was no evidence from which the prosecutor could deduce that appellant and the witness were homosexual lovers. We agree. We can find no evidence in the record which would justify the conclusion that the appellant and this alibi witness did in fact have a sexual relationship. The State emphasized during oral argument that appellant's niece stated that the two women shared a room "together," we cannot see how this supported the conclusion that the women were "sleeping together." If a prosecutor were able to imply that a person was a homosexual simply because he shared a room at one time with a person of the same sex, then every person who had a roommate in college would be open to implication that he or she had had a homosexual relationship. In our view there must be other evidence to support a deduction of homosexuality, apart from merely sharing a room. We do not hold, however, that a homosexual relationship may not be used to show bias on the part of a witness. However, to permit a prosecutor to imply that two individuals are homosexual lovers solely on the basis that they shared a bedroom would invite the jury to draw a highly prejudicial inference from facts subject to any number of innocent explanations.

Having concluded that this argument was error, we must next determine whether the argument was so prejudicial that its impression could be removed from the jury's mind by the trial court's instruction to disregard. To determine if an instruction is sufficient to cure error, we use a two step analysis, which is whether the argument is: (1) clearly calculated to inflame the minds of the jury; and (2) of such character to suggest that its impression cannot be removed from the minds of the jury. *Lopez v. State*, 643 S.W.2d 431, 436 (Tex.App.—Corpus Christi 1982, pet. ref'd). We conclude that the argument in

this case falls within both prongs of the analysis.

We are compelled to conclude that this argument was clearly intended to inflame the minds of the jurors. The prosecutor was instructed by the trial judge not to refer to a homosexual relationship between the appellant and the witness, which instruction the prosecutor indicated that he understood. Yet during argument, the prosecutor sought to imply to the jury that the two women had a homosexual relationship. We can see no other explanation for this action on the part of the prosecutor except that he was trying to inject a fact which was highly prejudicial to the appellant and outside the record in contravention of the trial court's ruling.

Turning to the question of whether this comment's impression could be removed from the minds of the jury, we conclude that it could not. Homosexuality is viewed in many different lights depending on one's personal view. However, the potential for harm from the injection that one is a homosexual is obvious. The possible prejudicial effect on the minds of the jurors is increased in this case since the implication would be that the appellant and her roommate were raising two small children in the house where they were conducting the alleged homosexual relationship. Of course, we cannot state with certainty that the injection of this fact influenced the jury, but clearly the jury had to disbelieve this witness to find appellant guilty. However, the potential for prejudice by the injection of this fact is so great that the only way we can be assured that the appellant had a fair trial is to reverse the conviction and remand for another trial without an unsubstantiated implication of homosexuality.

Our conclusion that this case should be reversed is supported by *Brown v. State*, 168 Tex.Cr.R. 67, 323 S.W.2d 954 (1959). The misdemeanor conviction in that case was reversed when the prosecutor argued that the defendant had "spent the night several times" with his chauffeur. An objection was sustained to this argument, and the jury was instructed to disregard it.

Prior to this argument, the prosecutor had asked several questions about the chauffeur's relationship with the defendant and the chauffeur denied any homosexual relationship. Objection to several of the questions were sustained and the jury instructed to disregard them. The Court of Criminal Appeals concluded:

> Reasonable minds could hardly differ upon the question of whether a verdict would be affected by the injection of the matter of unnatural, immoral and unlawful crimes against nature between a pastor [the defendant] and his male chauffeur. *Brown*, 323 S.W.2d at 957.

Considering the circumstances in which these women were allegedly conducting their relationship, the potential for harm to the appellant in this case was as great as that in *Brown*.

■ Finally, we reject the contention that the appellant waived any objection to the prosecutor's argument under consideration by failing to object to the prosecutor's subsequent argument. Although the prosecutor again referred to the fact the two shared one of the bedrooms of the three bedroom house, we do not see the objectionable implication which the prosecution was attempting to make in his initial argument. Thus, no objection to this statement was warranted. Neither can we agree that the prosecutor's subsequent statements "clarified" his prior use of the term "sleeping together" and that this clarification indicated to the jury that he did not intend the statement to have a sexual implication.

Reversed and remanded.

CARVER, Justice, dissenting.

I respectfully dissent and would hold that whether two women, admittedly occupying the same bedroom for five years prior to the time one appeared as an alibi witness for the other, did so innocently or otherwise was a legitimate subject for argument by the State's attorney attempting to show the alibi witness' partiality.

In *Hall v. State*, 663 S.W.2d 154 (Tex. App.1983, no writ), it was held that:

> Cross-examination is the principal means by which the believability of a witness

and the truth of his testimony are tested. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974). In attacking a witness' credibility, a cross-examiner may attempt to reveal possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case. *Davis, supra*, 415 U.S. at 316, 94 S.Ct. 1105, at 1110, 39 L.Ed.2d at 354. The partiality of a witness is always subject to exploration at trial and the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Davis, supra.* Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise a witness' testimony. *Alford v. United States*, 282 U.S. 687, 690, 51 S.Ct. 218, 219, 75 L.Ed. 624, 628 (1931).

663 S.W.2d at 157.

In *Daywood v. State*, 157 Tex.Cr.R. 266, 248 S.W.2d 479 (1952), it was held that:

> Appellant cites us a number of authorities which hold the proof of extraneous crimes inadmissible. We think that the questions here propounded were proper, since the witness Mrs. Voigt had testified to facts material to appellant's defense; and it then became proper for the State to show, if they could, that the witness was biased in favor of the accused.
>
> While there is no showing here of illicit conduct between the parties involved, we find the rule to be as stated in 58 American Jurisprudence, Section 720, page 388, "for the purpose of showing bias a witness in a criminal prosecution is properly subject to cross-examination concerning any illicit relations with the defendant.... It may be shown not only that the relationship existed at the time of the commission of the crime, but also that such relationship existed afterward."

248 S.W.2d at 483.

The majority opinion relies solely upon *Brown v. State*, 168 Tex.Cr.R. 67, 323 S.W.2d 954 (1959), which was a misdemeanor case in which there was neither testimony of sodomy between the accused and the witness nor proximity (such as occupying the same bedroom for five years). *Brown* holds:

> The State contends that the questions propounded to the witness Anderson were proper to show bias, under the rule in *Daywood v. State*, 157 Tex.Cr.R. 266, 248 S.W.2d 479; *Denmark v. State*, 95 Tex.Cr.R. 413, 254 S.W. 954; *Thompson v. State*, 35 Tex.Cr.R. 511, 34 S.W. 629; and *Crist v. 4 State*, 21 Tex.App. 361, 17 S.W. 260.
>
> None of these cases we believe support the view that the evidence as to acts of sodomy between the witness and the defendant was admissible. If so, such holding is modified so as to exclude proof of sodomy on the part of a defendant at his trial on a misdemeanor charge.

323 S.W.2d at 956–57. I would limit *Brown* to like situations and apply *Hall* and *Daywood* to this case.