Victor & Guadalupe
GUTIERREZ, Appellants,

v.

STATE of Texas, Appellee.

No. A14–81–793CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 9, 1984.

C.R. Daffern, Amarillo, for appellants.

Miguel Martinez, Amarillo, for appellee.

Before J. CURTISS BROWN, C.J., and CANNON and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

This is an appeal from a conviction of capital murder. A jury found two brothers, Victor and Guadalupe Gutierrez, guilty of intentionally killing a police officer and sentenced them to life imprisonment. In seventeen grounds of error, appellants now complain of various errors in the charge,

particularly in the application of the law of parties, insufficiency of the evidence, and of the court's failure to allow appellants to cross-examine an eyewitness regarding offenses pending against him or to introduce evidence of the prior statements of a co-indictee. We find no reversible error and therefore affirm the judgment of the trial court.

In order to clarify our review, we first delineate the pertinent facts. On December 25, 1980, appellants, their younger brother Ernesto, and Urbano Flores, drove into Amarillo from their home in Dumas. After patronizing a local bar and consuming some quantity of liquor, the four men drove around Amarillo. Police Officer Berry Joe McGuire, who was on patrol at the time, apparently noticed some irregularity in the car's movement, and signaled for them to pull over. Victor, the driver, got out of the car and approached Officer McGuire. Officer McGuire asked Victor for some identification, and, after viewing it, arrested him and placed him in handcuffs. He then placed Victor in his patrol car and returned immediately to appellant's vehicle.

Bonofacio Navarette (Navarette), who lived across the street from the site of the arrest, noticed the flashing patrol car lights and came to his window. He had observed the officer as he handcuffed and placed Victor in the car. Navarette testified that the officer left Victor in the patrol car and approached the other vehicle. Meanwhile, Victor attempted to get out of the police car. McGuire put him back into the car, returned to Victor's car and took the ignition keys. At this point, Victor once again had gotten the patrol car door open and was attempting to leave. As McGuire returned his patrol car to attend to Victor, Guadalupe, Ernesto, and Urbano got out of the other car. The testimony indicates that McGuire spoke to the men and then attempted to put Victor back into the car. All four men began fighting with the officer, pushing him to the ground and kicking him while he yelled for help. Navarette heard one of the men yell "fuck him up," and then heard four shots. Victor and

Guadalupe fled in Victor's car and were apprehended later outside Amarillo after their car ran out of gas. Officer McGuire was found dead at the scene of the occurrence with gunshot wounds to the head, shoulder, and hip. Appellants were tried and convicted of his capital murder.

■ The charge of the court included several paragraphs instructing the jury as to the appellant's potential vicarious responsibility under the law of parties. Both appellants argue that these charges on the law of parties were incorrect for a variety of reasons. Initially, we point out that the court was permitted to charge the jury on the law of parties although no such allegation was contained in the indictment. *See Pitts v. State*, 569 S.W.2d 898, 900 (Tex. Crim.App.1978). Furthermore, the court's refusal of Guadalupe's motion to quash his indictment because of its failure to specify the manner in which he was a party was not error since such an allegation is unnecessary.

■ Appellants next suggest that the instructions on the law of parties allowed the jury to convict them without proper proof of the requisite mental state. Appellant Gutierrez first challenges the following portion of the court's charge:

> Alternatively, if you find from the evidence beyond a reasonable doubt that on or about December 25, 1980 in Potter County, Texas, that the only difference between what actually occurred (the Capital Murder of Berry McGuire), if it occurred, and what the defendant desired, contemplated, or risked (the felony offense of Aggravated Assault on a Peace Officer, against Berry McGuire) was that a different offense (Capital Murder of Berry McGuire) was committed, then you will find the defendant, Victor Gutierrez, guilty of Capital Murder.

Appellant argues that this contradicts the holding in *Garrett v. State*, 573 S.W.2d 543 (Tex.Crim.App.1978). He contends it differs from the Garrett holding on that intent to commit aggravated assault is not sufficient to support a finding of guilty of

capital murder. Victor's reliance on *Garrett* is misplaced. The holding in *Garrett* was directed exclusively at the felony-murder statute. *See* Tex.Penal Code Ann. § 19.02(a)(3) (Vernon 1974). The instant charge, however, was based on Penal Code section 6.04(b)(1), the common-law "transferred-intent" doctrine. This section specifically provides that where several people act together in pursuit of an unlawful act, each one is liable for collateral crimes, even though unplanned and *not intended*, if the crimes are the foreseeable, ordinary and probable consequences of the preparation or execution of the unlawful act. *Curtis v. State*, 573 S.W.2d 218, 223 (Tex.Crim.App. 1978) (*emphasis added*). Since intent for the collateral crime was not required, the judge was correct in refusing to so charge the jury.

■ Similarly, Victor contends that this portion of the charge constituted a comment on the weight of the evidence. Specifically, he argues that the court assumed that he contemplated or risked the aggravated assault and further assumed that capital murder was the different offense and that the aggravated assault was a felony. There was evidence in the record indicating that Victor was involved in an aggravated assault. The charge authorized a conviction for capital murder only if the jury found that the murder occurred as a result of an act which Victor desired or risked, namely aggravated assault. Since there was evidence of the assault, any perceived comment on the evidence constituted harmless error. *See Coplin v. State*, 585 S.W.2d 734, 736 (Tex.Crim.App.1979). Additionally, the court did not assume a capital murder was committed, but rather referred to it only "if it occurred". The court properly referred to aggravated assault as a felony, as it is so designated in the Penal Code. *See* Tex.Penal Code Ann. § 22.02(c) (Vernon 1974). This ground of error is overruled.

■ In the next ground of error, Victor contends that the trial judge erroneously submitted a charge authorizing them to convict him of capital murder if they believed the shooting occurred during, and in furtherance of, a conspiracy to commit aggravated assault. He argues that this improperly permitted conviction absent proof of intent to kill Officer McGuire. We find this contention to be without merit because this portion of the charge tracked the language of Penal Code § 7.02(b). Section 7.02(b) contains a theory of criminal responsibility, which specifically applies to a defendant "though [he has] no intent to commit" the collateral offense. Tex.Penal Code Ann. § 7.02(b) (Vernon 1974). Since this section of the Penal Code is applicable to capital murder cases, the necessity for proof of intent is eliminated. *See English v. State*, 592 S.W.2d 949, 954–55 (Tex.Crim. App.1980), cert. denied, 499 U.S. 891, 101 S.Ct. 254, 66 L.Ed.2d 120 (1980); *Ruiz v. State*, 579 S.W.2d 206 (Tex.Crim.App.1979).

■ Additionally, the court had no obligation to instruct the jury at that point that if Victor lacked the intent to kill Officer McGuire, he was guilty of aggravated assault. We first point out that the jury was charged that Victor could be found guilty of aggravated assault if they did not find him guilty of murder or capital murder; thus a charge on aggravated assault was included. However, appellant submits that a special instruction concerning the *lack* of intent to kill Officer McGuire should have been given along with the murder charges. The charge required that the jury find that Victor intentionally and knowingly killed Officer McGuire, either individually or as a member of a conspiracy. Special instructions are not necessary when they simply emphasize an element of the case which the State is required to prove and which the defendant affirmatively denies. *See Green v. State*, 566 S.W.2d 578, 584 (Tex.Crim.App.1978); *Campbell v. State*, 626 S.W.2d 91, 92 (Tex.App.—Corpus Christi 1981, no pet.). Since Victor's requested instruction merely negated the element of intent, it was not error to refuse same. These grounds of error are overruled.

■ Victor next argues that there was no evidence to support the charge that he

fired the gun. This issue is based on a misunderstanding of the application of the law of parties. The charge provided the following:

"Now if you find from the evidence beyond a reasonable doubt that on or about the 25th day of December, 1980, in Potter County, Texas, that the defendant, Victor Gutierrez, acting as a party, did then and there intentionally or knowingly cause the death of an individual, Berry McGuire, hereafter styled the complainant, a peace officer in the lawful discharge of an official duty, knowing at the time that the complainant was a peace officer, by shooting the complainant with a firearm, then you will find the defendant, Victor Guterrez, guilty of Capital Murder."

Although it requires the jury to find that Victor intentionally or knowingly caused the death of McGuire, he need only have done so as a party. It is fundamental to the law of parties that each party to an offense may be charged with the commission of the offense. Specifically, each party may be held criminally responsible for the acts of another. Tex.Penal Code Ann. §§ 7.01, 7.02 (Vernon 1974). It is therefore immaterial to the parties charge that Victor did not actually pull the trigger. This ground of error is overruled.

■■■ Victor also contends that the law of parties was improperly applied in the following portion of the charge:

"Therefore, if you find from the evidence beyond a reasonable doubt that on or about the 25th day of December, 1980, in Potter County, Texas, the said defendant, Victor Guiterrez, did then and there, as a party, acting with the intent to promote or assist the commission of *the offense*, solicit, encourage, direct, aid, or attempt to aid Ernesto Gutierrez, and/or Urbano Jaramillo Flores, and/or Guadalupe Gutierrez to intentionally or knowingly cause the death of an individual, Berry McGuire, hereafter styled the complainant, a peace officer in the lawful discharge of an official duty, knowing at the time that the complainant was a

peace officer, by shooting the complainant with a firearm, then you will find the defendant guilty of Capital Murder." (emphasis added).

The judge applied this same charge to the offense of murder. Victor argues that the failure to delineate "the offense" was a fatal defect. He urges that the jury could have believed that he need only have intended to assist in the commission of aggravated assault, rather than capital murder or murder, and still be found guilty of those greater crimes. We disagree. Unless an entire element of an offense is omitted from the charge, the charge must be read as a whole and review should not be limited to one part standing alone. *Pittman v. State*, 554 S.W.2d 190, 191 (Tex. Crim.App.1977); *Robinson v. State*, 630 S.W.2d 394, 399 (Tex.App.—San Antonio 1982, pet. ref'd). In this charge, the previous paragraph stated that that portion of the charge concerned capital murder. There had been no reference of any kind to any other offense, and the portion describing aggravated assault appeared at the end of the charge, apart from the capital murder and murder sections. It stretches the imagination to suggest that this constituted an improper application of the law of parties. This ground of error is overruled.

Both Victor and Guadalupe contend that there was insufficient evidence of criminal responsibility to support the charge on the law of parties. They both argue that there was no evidence that they entered into a "conspiracy" to kill the officer, and Guadalupe additionally complains that there was no evidence that he knew of Ernesto's intent to kill him.

■■■ Appellants' charges relied on two major theories of criminal responsibility for the acts of another, namely Penal Code sections 7.02(a)(2) and 7.02(b). Under both of these theories, the fact that appellants did not participate in the actual shooting is immaterial. *Curtis v. State*, 573 S.W.2d 219, 222 (Tex.Crim.App.1978). Rather, responsibility is determined through complicity in the actions. Consequently, the evidence must sufficiently es-

tablish either that (1) appellants, acting with intent to promote or assist in the killing, solicited, encouraged, directed, aided or attempted to aid in its commission; or (2) the murder occurred during an agreed attempt to carry out an aggravated assault and the murder was in furtherance of that attempt and should have been anticipated. *See* Tex.Penal Code Ann. §§ 7.02(a)(2), 7.02(b) (Vernon 1974). In deciding whether an "agreement" or "conspiracy" or promotion of the offense existed, we may examine events prior to, during and after the occurrence of the offense. *Curtis v. State*, 573 S.W.2d 219, 222 (Tex.Crim.App.1978). The evidence must include at least some type of encouragement by words, actions, or agreement, which show an understanding and common design to do a certain act. *See Curtis* at 222; *Baldridge v. State*, 543 S.W.2d 639, 643 (Tex.Crim.App. 1976).

▓ The eyewitness testimony here indicated that all four men were present at, and involved in, the incident. Victor immediately evidenced animosity toward the officer and the situation by his repeated attempts to leave the police car. The three others joined into the fracas by aiding Victor. The testimony indicates that *all four* men began beating on the officer, knocking him to the ground, kicking him, and all four of them were on top of him when the officer was shot. Ernesto shouted "fuck him up", which, according to the evidence, was a Mexican colloquialism for "kill him". At this point the fatal gunshots were fired, and all four men then fled the scene. The evidence clearly shows an implicit agreement to commit the offense formulated contemporaneously with the offense. *See Curtis* at 222; *Gordon v. State*, 640 S.W.2d 743, 758 (Tex.App.—San Antonio 1982, no pet.). We hold that the evidence, when viewed in the light most favorable to the verdict, sufficiently shows that appellants, by their actions, participated in and therefore agreed to the assault and resulting murder of Officer McGuire.

▓ Guadalupe's attack on the insufficiency of evidence regarding his lack of knowledge as to Ernesto's intent to kill McGuire is similarly without merit. He correctly points out that some knowledge of the party's intent to kill the officer is required; however, the knowledge can again be inferred from the circumstances surrounding the occurrence. *See Randolph v. State*, 656 S.W.2d 475, 477 (Tex. Crim.App.1983); *Baldridge v. State*, 543 S.W.2d 639, 643 (Tex.Crim.App.1976). Guadalupe was involved in the fight and the jury could easily have inferred that he, along with the others, contemporaneously agreed to the killing. Additionally, we are not convinced that the cases cited by appellant are controlling. The holding in *Baldridge* is based on a 1971 case, prior to the adoption of 7.02(b) of the Penal Code. Under this section of the code, a finding of intent to kill was unnecessary. Rather, Guadalupe need only have participated in an aggravated assault, which subsequently escalated into murder. Tex.Penal Code Ann. § 7.02(b) (Vernon 1974). For both of the foregoing reasons, appellants' insufficiency grounds of error are overruled.

▓ Guadalupe next contends that the trial court erred in failing to quash the indictment because it did not give notice of the facts constituting the offense. We disagree. An indictment which tracks the language of a penal statute is legally sufficient to provide the defendant with notice of the offense with which he was charged. *Ward v. State*, 642 S.W.2d 782 (Tex.Crim. App.1982); *Bollman v. State*, 629 S.W.2d 54, 55 (Tex.Crim.App.1982). This indictment charged Guadalupe with knowingly and intentionally causing the death of a peace officer in the lawful discharge of an official duty, knowing at the time that he was a peace officer. This essentially tracks the language of Sections 19.02(a)(1) and 19.03(a)(1), and therefore provided adequate notice of the offense.

▓ Appellant also argues the trial court erred in failing to respond to appellants' timely requested special charge and instruction to the jury on the defense of independent impulse. We disagree. An independent impulse defense, as applicable

to section 7.02(b) prosecutions, rests on the creation of a reasonable doubt that the offense charged was not committed in furtherance of the unlawful purpose of the conspiracy. Where some evidence is presented that might support such a reasonable doubt on the issue, a jury charge on the defensive matter should be given. *Simmons v. State*, 594 S.W.2d 760 (Tex. Crim.App.1980), *vacated on other grounds*, 453 U.S. 902, 101 S.Ct. 3134, 69 L.Ed.2d 988 (1981), on remand 623 S.W.2d 416 (Tex. Crim.App.1981) (en banc).

■■■ Here there was no evidence presented that the murder of Officer McGuire was not committed in the furtherance of the assault upon him. Since the death of the police officer would have been a reasonably foreseeable consequence of such a violent assault in which the appellant participated, the appellant was not entitled to an instruction on the defense of impulse.

■■■ Victor and Guadalupe both urge that the trial court erred in failing to instruct the jury on the lesser included offense of voluntary manslaughter. We disagree. A charge on voluntary manslaughter is necessary only when there is evidence that a defendant acted under the immediate influence of sudden passion arising from adequate cause. *Schoelman v. State*, 644 S.W.2d 727, 733 (Tex.Crim.App. 1983). Victor suggests that he was reacting to undue force exhibited by Officer McGuire during the arrest, while Guadalupe argues that he was provoked by the Officer shutting the patrol car door on Victor's legs. Even if these allegations were true, we do not believe they would support a finding of sudden passion arising from adequate cause. Officer McGuire attempted to make a routine DWI arrest, after which the suspect made several attempts to flee. It is ludicrous to suggest that any type of physical force by a lone police officer at this point constituted adequate cause to retaliate with a violent, unrestrained attack and murder. Appellants were not entitled to an instruction on vol-

untary manslaughter, and these grounds of error are therefore overruled.

■■■ In his final attack on the jury's charge, Victor contends that the charge as a whole was misleading and confusing and calculated to injure his rights. After careful review of the charge as a whole, we find that it sufficiently presented the applicable law and adequately protected his rights. *See Garcia v. State*, 630 S.W.2d 914, 917 (Tex.App.—Amarillo 1982, no pet.). The charge first dealt with the offense of capital murder and explained the various theories of criminal responsibility related thereto. It then instructed the jury that if they did not find him guilty of capital murder, that they could find him guilty of murder under the theories of complicity. Finally, they were told that if he was not guilty of either of the murder charges, he could be found guilty of aggravated assault. Although admittedly complex, the charge was arranged in an orderly fashion presenting alternative theories of culpability. As such, we find it does not present grounds for reversal on appeal.

Appellants Victor and Guadalupe next assert that the trial court erred in not permitting them to question witness Bonofacio Navarette in front of the jury regarding certain charges pending against him for the limited purposes of showing bias, prejudice, interest and motive with regard to his testimony. As one of the prosecution's principal witnesses, Navarette testified that he watched the altercation between the defendants and the victim from the window of his home. Even though Navarette was not the only eyewitness, his testimony was very damaging to the appellants. Appellants argue they should have been allowed to impeach Navarette's testimony by showing that misdemeanor charges for theft, DWI, and bond forfeiture were pending against Navarette, and that the theft charge had been dropped shortly after the death of the victim.

At the beginning of the appellants' cross-examination of Navarette, the district attorney requested that the court grant his motion in limine to prevent questioning the

witness about charges pending against him. After some discussion among the judge, the district attorney, and appellants' attorneys, Navarette was taken on voir dire and questioned thoroughly by appellants' attorneys and by the district attorney. Navarette testified he had not been promised special treatment by any law enforcement officer or anyone from the district attorney's office. The district attorney also took the stand and testified that no one from his office had suggested to Navarette the possibility of favorable treatment in exchange for his testimony. He testified that the charges pending against the witness were all misdemeanors and were within the *county* attorney's jurisdiction so that the district attorney had no control over the disposition of these charges. The trial judge then granted the State's motion in limine and appellants were not allowed to question the witness before the jury about the pending charges.

It is a well-established rule that great latitude is allowed the accused in showing any fact, including pending charges, which would tend to establish ill feeling, bias, motive, and animus on the part of any witness testifying against him. *Parker v. State,* 657 S.W.2d 137 (Tex.Cr. App.1983). *Spriggs v. State,* 652 S.W.2d 405 (Tex.Crim.App.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 249, 78 L.Ed.2d 237 (1983); *Hodge v. State,* 631 S.W.2d 754 (Tex.Crim.App.1982); *Carrillo v. State,* 591 S.W.2d 876 (Tex.Crim.App.1979); *Spain v. State,* 585 S.W.2d 705 (Tex.Crim. App.1979); *Chvojka v. State,* 582 S.W.2d 828 (Tex.Crim.App.1979); *Bates v. State,* 587 S.W.2d 121 (Tex.Crim.App.1979); *Cloud v. State,* 567 S.W.2d 801 (Tex.Crim. App.1978); *Simmons v. State,* 548 S.W.2d 386 (Tex.Crim.App.1977); *Evans v. State,* 519 S.W.2d 868 (Tex.Crim.App.1975); *Smith v. State,* 516 S.W.2d 415 (Tex.Crim. App.1974). *See also Hall v. State,* 663 S.W.2d 154 (Tex.App.—Fort Worth 1983, no pet.). However, trial courts have considerable discretion as to how and when bias may be proved and as to what collateral evidence is material for that purpose. *Spriggs* at 408; *Hodge* at 758; *Carrillo* at 886; *Chvojka* at 831; *Bates* at 133; *Cloud* at 802. The extent to which a witness may be cross-examined on collateral matters for the purpose of showing bias rests in the sound discretion of the trial judge. The judge must balance the probative value of the evidence sought to be introduced against the prejudicial risk in its admission. Risks include the possibility of undue prejudice, embarrassment, harrassment to either witness or party, and the possibility of undue delay or waste of time. *Carrillo v. State,* 591 S.W.2d 876 (Tex.Crim.App.1979).

Generally, unadjudicated criminal offenses may not be used to impeach witness in a criminal case; however, evidence of pending charges against the witness is admissible for the limited purpose of showing bias, prejudice, interest, and motive of the witness in testifying as he did. *Id.* Although the mere fact of an arrest or indictment of a witness is not normally admissible for impeachment purposes to show bias, motive, ill feelings or animosity where the evidence of an arrest or legal accusation arises out of the same transaction for which the defendant is on trial, it may be admissible to impeach the witness. *Smith v. State,* 516 S.W.2d 415 (Tex.Crim.App.1974).

In the instant case, the witness, Navarette, was not an accomplice, suspect, or in any way a participant in the crime for which the appellant was charged. Rather, he was an innocent bystander who happened to be in a position to observe the events in question. He did not know any of the parties involved and therefore had no reason to be biased or hostile toward appellants. Furthermore, the charges pending against Navarette were in no way connected with the death of the victim. Rather, they were misdemeanor charges filed by the county attorney's office, not the district attorney's office.

The trial judge allowed the appellant to question the witness extensively on voir dire. Navarette and the district attorney both testified that no deal had been made. Because there was no evidence suggesting

self-interest, ill will, or animus, the trial court, in its discretion, refused to allow cross-examination before the jury as to the charges pending against Navarette. We cannot under these circumstances say the trial court abused its discretion.

Appellants rely on numerous authorities which they claim necessarily lead to the conclusion that the inability to cross-examine Navarette was fatal to the State's case. These cases are distinguishable. In *Evans, Spain,* and *Parker* the testifying witness was an indictee or suspect in the principal crime for which the defendant was on trial. Thus there was obviously incentive for the witness to testify against the defendant to protect his own self interest. In *Randle v. State,* 565 S.W.2d 927, 931 (Tex.Crim.App. 1978) the felony charges pending against the witness were unrelated to the murder for which the defendant was on trial. But in that case, the district attorney had jurisdiction over both cases. Coincidently, the witness's bond was reduced from $50,000 to $10,000 on the very day he testified against the defendant. These two facts constituted sufficient evidence so that the defendant should have been able to explore the possibility of undue pressure before the jury. In *Simmons* the Court of Criminal Appeals found the trial court erred in not allowing the defendant to develop a bill of exception showing the possibility of special treatment of the witness by the prosecutor's office.

None of these extenuating·circumstances exist in our case. The trial court permitted the appellants to fully develop a bill of exception in which Navarette was questioned extensively about the possibility of special treatment. The witness denied having been promised anything and, in fact, stated that he was not even sure what charges were pending against him. The district attorney took the stand and testified that his office did not have jurisdiction over the witness' misdemeanor charges and that the district attorney's office had not cooperated, nor even communicated with the county attorney's office in any way as to the charges pending against Navarette in county court. While the trial court could have allowed the appellant to show the jury what was developed on the bill of exception, we can find no abuse of discretion in refusing to do so under the circumstances.

■ Appellant Victor next argues that the trial court erred in refusing to admit a prior statement made to the police made by co-indictee, Urbano Flores. We disagree. Upon arrest, Flores gave a statement to the district attorney's office. When called by the appellants to testify, Flores claimed his fifth amendment privilege. The appellants offered Flores' prior statement and the trial court properly refused to admit it.

■ The affidavit here was hearsay and inadmissible. An exception to the general rule of exclusion of such declarations lies where (1) the defendant admits his guilt, (2) the State's case is based entirely upon circumstantial evidence, (3) the guilt of the defendant on the trial is inconsistent with the guilt of the declarant, and (4) independent evidence shows that the declarant had the capability to commit the act. *Thompson v. State,* 480 S.W.2d 624 (Tex.Crim. App.1972). In the instant case, the statement fails to satisfy the requirements listed above.

■ In a related ground of error, Guadalupe suggests that the State pressured Flores into claiming his fifth amendment right and that such actions amounted to prosecutorial misconduct. This contention is without merit. Article 2.01 of the Code of Criminal Procedure specifically instructs that prosecuting attorneys are not to suppress any facts that might establish the innocence of the accused; however, this article presumes some type of action on behalf of the attorney to suppress those facts. *See Ex parte Lewis,* 587 S.W.2d 697 (Tex.Crim.App.1979). In the instant case, Flores' attorney testified that he decided it would be in his client's best interest not to testify since the charges against Flores had not been dismissed at the time he was called to testify. The State's attorney also indicated that no decision had been made to dismiss the charges in the event that any facts might come out during the trial of his

708

co-indictees which would incriminate him. Finally, there is no indication of the materiality of the evidence, and without such the claim of misconduct is not supported. *See Ex parte Lewis* at 702 (on state's motion for rehearing). This ground of error is overruled.

Because we have found no reversible error as to either appellant, the judgment of the trial court is affirmed.