COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| SAUL CONTRERAS, | § | No. 08-06-00205-CR |
|  | § |  |
| Appellant, | § | Appeal from |
|  | § |  |
| v. | § | 346th District Court |
|  | § |  |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
|  | § |  |
| Appellee. | § | (TC # 20060D02859) |
|  | § |  |

**O P I N I O N**

The State indicted Saul Contreras on two counts of murder.  Count I, capital murder, specified that Appellant intentionally or knowingly caused the death of Jazmine Contreras by striking her about the body with his hand.  Count II, felony-murder, specified that Appellant committed the felony offense of injury to a child by intentionally, knowingly, recklessly, or by criminal negligence, by act, causing bodily injury to Jazmine Contreras by striking her about the body with his hand.  Appellant pled not guilty to the charges.  The jury found Appellant not guilty of capital murder in Count I, but guilty of murder in Count II.  Punishment was assessed at 99 years' confinement in the Institutional Division of the Texas Department of Criminal Justice.  For the reasons that follow, we affirm.

# FACTUAL SUMMARY

On November 28, 2003, Susana Hernandez (Jazmine's mother) and Claudia Contreras (Appellant's wife and Susana's sister) planned to take their children to Chuck E. Cheese to celebrate a birthday. Susana's two youngest children, Delilah and Jazmine, stayed at home with Appellant. Jazmine was asleep on the couch when Susana left around 6 p.m.

Appellant was in his bedroom watching a basketball game. About half an hour after the others had left, Appellant heard a noise sounding like a thump, followed by Jazmine crying. Appellant immediately checked her head for any bumps. He picked her up to calm her crying and then took her to his bedroom and laid her on the bed. Her diaper was soaked and he changed her. Jazmine stayed awake for fifteen to twenty minutes and then Appellant took her up to her bedroom. He went back downstairs to do some laundry and watch the game. Fifteen minutes later, he checked on Jazmine and she seemed fine. He checked on her one more time before the others arrived home around 9:30 p.m. When Susana finished unloading the car, Appellant told her that Jazmine had fallen off of the couch. Susana went upstairs to check on her, saw that the child was asleep, and covered her chest with a blanket. Around 11 p.m., Susana put the remaining children to bed. At that point, Susana's son said that Jazmine was not moving. Susana tried to wake her, but Jazmine was cold, pale, and stiff. The child was not breathing. Susana ran downstairs and told Appellant and Claudia. Claudia dialed 911 as Appellant began attempting CPR. The police arrived ten minutes later. Jazmine was taken by ambulance to the hospital where she was pronounced dead.

Detective Aguirre responded to the scene around 1 a.m. He briefly spoke with Appellant and asked him to come to the police station. They discussed the incident at Detective Aguirre's

computer terminal and the officer typed the conversation. Detective Aguirre printed the statement;[1] Appellant reviewed and signed it.

Around 4 p.m. on November 29, 2003, Detective Aguirre met with other detectives to discuss the results of the autopsy in which Dr. Juan Contin concluded that the victim died from blunt-force trauma to the abdomen. Detective Aguirre called Appellant and asked that he return to the station for further interviews. Appellant was taken to an interview room and questioned by Detective Aguirre and Detective Ochoa for about two hours. The officers confronted Appellant about the inconsistency between his story and the autopsy report. Toward the end of the interview, Appellant revealed that he had injured the child. Detective Aguirre typed the statement,[2] and Appellant reviewed and signed it. He was arrested and charged with capital murder.

Appellant brings eight issues for review. Stated briefly, he complains of evidentiary error, charge error, prosecutorial misconduct, due process violations, and cumulative error.

## EVIDENTIARY ERROR

### Standard of Review

A trial court's ruling on the admission or exclusion of evidence is reviewed under an abuse of discretion standard. *Pena v. State*, 155 S.W.3d 238, 243 (Tex.App.--El Paso 2004, no pet.), *citing Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991). A trial court's decision to admit

---

[1] In Appellant's first statement, he said he stayed at home to take care of Jazmine and her sister while the rest of the family went to Chuck E. Cheese. Jazmine fell asleep on the couch and then fell off. Appellant checked her for bumps or bruises, but he didn't feel anything. Appellant took her to his room and noticed she needed a diaper change. He changed her diaper and put on her pajamas. He then put her to bed upstairs in her room. When the rest of the family arrived home, Appellant told Susana that Jazmine had fallen off the couch, but that he checked her and did not find any bumps or bruises. An hour later, Susana noticed that the child was not moving and was cold to the touch. She ran downstairs and Appellant attempted CPR while his wife called the police.

[2] In Appellant's second statement, he said that while changing Jazmine's diaper, he punched her in the stomach with his closed right fist about four times. He took her up to her bed after he put on her pajamas. Jazmine kept looking at him and moaning. Appellant went back downstairs and continued watching the basketball game. Later on, the child's mother came home and discovered Jazmine in her bed.

or exclude expert testimony will not be disturbed absent a clear abuse of discretion. *Pena*, 155 S.W.3d at 243, *citing Wyatt v. State*, 23 S.W.3d 18, 27 (Tex.Crim.App. 2000). An abuse of discretion exists when the trial court's decision is so clearly wrong that it lies outside the zone of reasonable disagreement. *Pena*, 155 S.W.3d at 243, *citing Montgomery*, 810 S.W.2d at 391. The trial court abuses its discretion if its decision or action is arbitrary, unreasonable, and made without reference to any guiding rules or principles. *Id.*

### Dr. Richard Ofshe

Appellant's first two issues involve the expert testimony of Dr. Richard Ofshe. In Point of Error One, Appellant challenges the trial court's ruling that this expert witness could not relate the specific facts of the case to his expertise and knowledge. In Point of Error Two, Appellant contends the trial court erred when it ruled Dr. Ofshe could not testify about ultimate issues to be determined by the jury.

*Relevant Facts*

Dr. Ofshe is a social psychologist and a professor at the University of California at Berkley. Appellant intended for him to testify about interrogation methods and the influence process in police interrogation. During *voir dire*, Dr. Ofshe stated his purpose:

> I'm going to help educate this jury as to how police interrogation works. I'm going to help educate this jury as to how to analyze what's been testified to as to what happened in the interrogation, so the jury can decide what weight to give the statement that was elicited. That's the jury's job. I'm not here to tell the jury that this is a true or a false confession.

The prosecutor objected and the court ruled:

> He can testify as to the general basis of interrogation methods. Obviously, we know they exist. We know they existed in this case. We know it exists for the Police Department. You-all tendered over those documents. But, Mr. Ponder, I will tell you: He will not testify as to the veracity of any statement. He will not testify as to the voluntariness of any statement, and he will also not testify as to any truth or false

confession. Are you all clear on my conditions?

With the jury present, Dr. Ofshe gave a brief overview of the development of interrogation techniques. The court allowed him to testify as to the principles of interrogation but warned him to stay away from the issues of "veracity, truth or falseness to a confession, or voluntariness." The court also stressed that Dr. Ofshe was not to give an ultimate opinion on these issues. In the absence of the jury, the defense perfected a bill of exceptions. Dr. Ofshe analyzed the general scientific principles and applied them to the facts of the case. He testified that he reviewed the facts and concentrated on what happened during the interrogation. There were two irreconcilable scenarios, one from Appellant and one from the detectives. The two versions were then evaluated using Dr. Ofshe's model, Defendant's Exhibit 5. Appellant's account of the interrogation fit the model used by Dr. Ofshe.

Appellant's account reported tactics designed to shake his confidence. The detectives told him they had enough evidence to arrest him. Dr. Ofshe explained that merely creating a state of hopelessness is not enough to trigger a false confession. Next, Dr. Ofshe looked at motivational tactics. The detectives gave Appellant the option of saying Jazmine's death was an accident, or else they would make it look like pre-mediated, cold-blooded murder. The detectives used threats of violence and told Appellant they would not release the child's body. They threatened that the other children would be suspects in the crime. Finally, if Appellant did not confess, his wife and Susana would be arrested. On the other hand, if Appellant did confess, he would get to see his wife, he would be out on bond by Monday, and the detectives would go to bat for him with the district attorney. Based on Appellant's version of events, Dr. Ofshe concluded that the detectives "relied on the introduction of psychological coercion in order to precipitate the decision to comply and to confess." The significance is that "if this is a false confession, it's necessary that psychological

coercion be present." Next, defense counsel asked Dr. Ofshe whether the factors in this case caused a false confession:

> Q. What is your opinion as to whether, the factors that you have described, as to whether that could cause a false confession?
>
> A. It's my opinion that these factors could cause someone to decide to falsely confess.
>
> Q. And your function is not to make a determination as to whether this statement is false or not false?
>
> A. It's not my job. I'm not a member of the jury.
>
> Q. As to voluntariness?
>
> A. That's a legal issue. It's my position that this is clearly an interrogation, according to Mr. Contreras, in which the major -- the principle motivating factors involved linking continuing denial to harsh punishment, to bad treatment, and compliance and agreeing to the scenario that was suggested were linked to the receipt of lenient treatment and other benefits.

*Admissibility of the Testimony*

Appellant argues the trial court erred when it refused to allow Dr. Ofshe to relate the specific facts of this case to his expertise and knowledge in the field of influence in police interrogation for the benefit of the jury. He contends the witness should have been permitted to discuss the potential impact of the detectives' interrogation techniques on the veracity and voluntariness of Appellant's second statement.

Rule 702 governs the admissibility of scientific expert testimony in a criminal trial and requires the proponent of scientific evidence to show, by clear and convincing proof, that the evidence he is offering is sufficiently relevant and reliable to assist the jury in accurately understanding other evidence or in determining a fact in issue. *See* TEX.R.EVID. 702; *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000). The trial court makes the initial determination

about whether the expert and the proffered testimony meet these requirements. *Helena Chemical Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001). To assist the trier of fact, it must be shown that the expert's knowledge and experience on a relevant issue are beyond that of the average juror and that the testimony will help the fact finder understand the evidence or determine a fact issue. *See K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000). When the jury is equally competent to form an opinion about the ultimate fact issues, or the expert's testimony is within the common knowledge of the jury, the trial court should exclude the expert's testimony. *Id*. Thus, "Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance." *Id*., *quoting Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986).

It is generally improper for a witness to offer a direct opinion as to the truthfulness of another witness. *Arzaga v. State*, 86 S.W.3d 767, 776 (Tex.App.--El Paso 2002, no pet.); *see Schutz v. State*, 957 S.W.2d 52, 59 (Tex.Crim.App. 1997); *Yount v. State*, 872 S.W.2d 706, 710-11 (Tex.Crim.App. 1993). Evidence of this type is inadmissible because it does more than assist the trier of fact to understand the evidence or to determine a fact in issue; it impermissibly decides an issue for the jury. *Arzaga*, 86 S.W.3d at 776; *see Yount*, 872 S.W.2d at 709; *Perkins v. State*, 902 S.W.2d 88, 93 (Tex.App.--El Paso 1995, pet. ref'd). There is a "fine but essential" line between helpful expert testimony and impermissible comments on credibility. *Schutz*, 957 S.W.2d at 60, *quoting State v. Myers*, 382 N.W.2d 91, 98 (Iowa 1986). Expert opinions must aid and not supplant the jury's decision. *Schutz*, 957 S.W.2d at 59.

*Schutz* involved a conviction for aggravated sexual assault on a child. 957 S.W.2d 52. The defendant complained that the trial court erroneously admitted expert testimony concerning the credibility of the child complainant. *Id*. at 56. The testimony in dispute came from a social worker

and a psychologist. *Id*. The social worker's testimony did not express an opinion about whether the child's allegations had been the subject of manipulation but merely stated that the child did not exhibit "behaviors that point to being manipulated." *Id*. at 73. This testimony did not constitute a direct comment upon the truth of the complainant's allegations. *Id*. But testimony that the complainant had not exhibited any indication of fantasizing was a direct comment on truthfulness. *Id*. The psychologist testified that manipulation of the child was the "less likely explanation." *Id*. The court held that by this testimony, the psychologist conveyed to the jury that the child's allegations were not the result of manipulation. Therefore, he had directly commented on the child's truthfulness. *Id*.

The State contends that under the *Schutz* framework, Dr. Ofshe should not have been allowed to opine as to how the interrogation techniques may have affected Appellant's confession because the jury was just as capable of applying those factors to the surrounding circumstances. Appellant counters that Dr. Ofshe was prepared to provide insights for the jury to use in assessing the testimony, not to instruct the jury on the credibility of the Appellant's confession.

We conclude that Dr. Ofshe's testimony was not beyond that of the average juror's knowledge and experience and that his testimony would not help the jury understand the evidence or determine a fact issue. *See K-Mart Corp*. 24 S.W.3d at 360. The jury was equally competent to form an opinion about the ultimate fact issues, namely the voluntariness of Appellant's second statement. Because Dr. Ofshe's testimony impermissibly offered a direct opinion as to the truthfulness of Appellant's statement, we find no error in its exclusion. We overrule the first two points of error.

### Susana Hernandez

Appellant next complains the trial court erred when it refused to allow Appellant to fully

cross-examine Jazmine's mother, Susana Hernandez.

*Criminal Record and Misdemeanor Assault*

During direct examination, Susana testified that she was currently on deferred adjudication probation for a misdemeanor assault charge which had occurred after Jazmine's death. On cross-examination, defense counsel announced his intention to ask Susana whether she pled guilty to two assaults, not just one. The prosecutor argued that even though she admitted the conduct, she has not been convicted and therefore she could not be cross-examined about it. The defense countered that the State was leaving a false impression with the jury and that the testimony reflected a pattern of violence suggesting Susana's guilt in her daughter's death. The trial court excluded the evidence of Susan's other assaults. During the bill of exceptions, Susana admitted to assaulting her sister Claudia at a quinceanera. She was also questioned about Child Protective Service investigations and a positive test for cocaine.

In *Lopez v. State*, 253 S.W.3d 680 (Tex.Crim.App. 2008), the Court of Criminal Appeals decided that two extraneous drug offenses to which the defendant had admitted guilt in a prior prosecution and which had been taken into account during sentencing, did not constitute prior "convictions" for the purposes of impeachment in a subsequent prosecution. In other words, there must ordinarily be a judgment of guilt for the crime in question. *Id.* at 685. We conclude that the trial court did not err in excluding the evidence of Susana's assault on her sister.

Appellant next claims that the State attempted to portray Susana in a more favorable light by only questioning her about probation for one assault. By minimizing Susana's acts, he continues, the State opened the door to a full examination. The State counters that Susana's testimony was factually accurate and that her testimony did not leave a false impression because she did not testify that her one assault was her only assault, nor did she deny assaulting her sister.

When attacking the credibility of a witness, evidence of prior convictions is admissible only if the crime was a felony or involved moral turpitude, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect. *See* TEX.R.EVID. 609(a). An exception applies when a witness makes statements concerning her past conduct that suggest she has never been arrested, charged, or convicted of any offense. *Delk v. State*, 855 S.W.2d 700, 704 (Tex.Crim.App. 1993); *Prescott v. State*, 744 S.W.2d 128, 131 (Tex.Crim.App. 1988). Where a witness "creates a false impression of law abiding behavior, '[s]he opens the door' on [her] otherwise irrelevant past criminal history and opposing counsel may expose the falsehood." *Delk*, 855 S.W.2d at 704. This exception is not limited to final convictions. *See Prescott*, 744 S.W.2d at 130-31.

In *Hammet*, the defendant was charged with driving while intoxicated. *Hammet v. State*, 713 S.W.2d 102, 104 (Tex.Crim.App.1986). On direct examination, he was asked about a prior conviction for public intoxication. *Id.* at 104. His attorney followed up by asking, "Is that the only time you have been arrested for public intoxication?" to which the defendant answered, "Yes, sir." *Id*. The prosecutor then argued that the defendant had created the impression that he had never been arrested for any offense other than public intoxication. *Id*. The prosecutor therefore believed that he should be allowed to ask the defendant about other convictions secured against him. *Id*. Concluding that it was error to admit the prior conviction for impeachment purposes, the Court of Criminal Appeals held that when determining to what extent a colloquy has "opened the door," it is important to examine how broadly one would interpret the question that was asked. *Id*. at 106. The court recognized that intonation is very important when attempting to reveal the import of a question. *Id*. Finding none, the court assumed the question was asked just as it appeared in the record and that the tenor was no different than the "black letters" reflected. *Id*. Additionally, the

court believed the major substantive issue in the case would influence how broadly the question would be interpreted. *Id.* Since the issue there was whether the defendant was intoxicated when his vehicle was stopped, the court found that the narrower import of the question was the more likely interpretation, i.e., that he only had one conviction for public intoxication. *Id.* Therefore, it was error to allow the State to question him about the prior conviction since the defendant to did not open the door. *Id.*

The following exchange occurred between the State and Susana on direct examination:

Q. [Mr. Briggs]        Okay. Before we get into all of that, tell me, Ms. Hernandez, are you on probation currently?

A. [Susana]        Yes.

Q. [Mr. Briggs]        And are you on what's called deferred adjudication probation?

A. [Susana]        Yes, sir, I am.

Q. [Mr. Briggs]        And is that for a misdemeanor assault charge?

A. [Susana]        Yes.

Q. [Mr. Briggs]        Do you recall when you were placed on that probation?

A. [Susana]        March 28th of this year.

Q. [Mr. Briggs]        Of this year?

A. [Susana]        Yes.

Q. [Mr. Briggs]        Of 2006?

A. [Susana]        Yes.

Q. [Mr. Briggs]        Did the assault for which you were placed on probation take place before or after the death of Jazmine?

A.[Susana]        After.

Q. [Mr. Briggs]          When will you be off probation?

A. [Susana]          15 months.

This exchange refers specifically to Susana's probationary status for a misdemeanor assault charge. The State did not ask if this was Susana's only assault, but instead asked if this was the assault for which she was on probation. By accurately answering the specific question by the State, Susana did not create a false impression for the jury. Just as in *Hammet*, the question asked by the State cannot be interpreted broadly to include Susana's other assaults and the answer given by Susana did not "open the door" for the defense to ask about the other assaults. We perceive no abuse of discretion here.

Appellant next asserts that Susana was clearly biased and that the jury should have had the ability to judge the credibility of her testimony in full context. The State responds that the evidence of the assault was not relevant to show bias or motive because Susana testified the assault had nothing to do with Jazmine's death. We agree.

A trial court should allow great latitude in the cross-examination of a witness concerning possible bias, prejudice, or self-interested motives to falsify testimony. *Chambers v. State*, 866 S.W.2d 9, 26 (Tex.Crim.App. 1993), *cert. denied*, 511 U.S. 1100, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994); *Gutierrez v. State*, 681 S.W.2d 698, 706 (Tex.App.--Houston [14th Dist.] 1984, pet.ref'd). The proponent bears the burden of showing the relevance of the evidence to the issue of bias. *Chambers*, 866 S.W.2d at 26-27. The extent to which a witness may be cross-examined lies within the sound discretion of the trial judge, who must balance the probative value of the evidence against its prejudicial risks, such as undue prejudice, embarrassment, harassment, confusion of the issues, and undue delay. *Id.* at 27.

On voir dire outside the presence of the jury, Susana admitted that she assaulted her sister.

Q. [Mr. Segal]    And that assault charge was for assaulting your sister, Claudia, at a quinceanera?

A. [Susana]    Yes.

Q. [Mr. Segal]    Very briefly, what had she done to enrage you to the point where you assaulted her?

A.[Susana]    She pushed me from the back as I was leaving the party.

Q. [Mr. Segal]    There had, prior to that, been words between the two of you?

A.[Susana]    She was telling me something. I walked away.

Q. [Mr. Segal]    What was she telling you?

A. [Susana]    Something about that I was going to jail.

Q. [Mr. Segal]    And what was she telling you you were going to go to jail for?

A. [Susana]    I didn't listen. I walked away.

Appellant has failed to meet his burden of showing the relevancy of this testimony. The assault occurred after Jazmine's death. Susana did not testify that the assault had anything to do with Jazmine's death. We find no abuse of discretion.

Next, Appellant argues that the testimony went to the heart of his two-pronged defense: (1) that his confession was coerced and false, and (2) substantial evidence pointed to an alternative suspect--Susana. The State responds that the testimony was improper character-conformity evidence inadmissible under Texas Rule of Evidence 404(b), and that it did not satisfy the nexus/relevance requirement.

Rule 404(b) is not limited to the defendant's prior misdeeds; it includes the presentation of evidence of a witness's extraneous misconduct to prove she acted in conformity therewith. *See Castaldo v. State*, 78 S.W.3d 345, 348-49 (Tex.Crim.App. 2002). Appellant suggests that Susana assaulted Claudia, and therefore she killed Jazmine. Susana's assault is not admissible to prove she

acted in conformity with that behavior and thus killed her daughter. *See* TEX.R.EVID. 404(b). It is also clear that Susana's assault is not relevant to Appellant's claim that his admission was coerced and false.

*History of Violence and Treatment of her Children*

Appellant next points to Susana's violent attack on her neighbor and her drunken endangerment of her children. He claims that these areas of cross-examination were: (1) relevant to show Susana's bias and motive for testifying against Appellant; and (2) the testimony was vital to his two-pronged defense that his confession was false and coerced and that Susana was the actual perpetrator.

Appellant tried to introduce evidence that Susana was violent and verbally abusive with her children. Susana was asked on voir dire about endangering her children and about an investigation by Child Protective Services for hitting the children. Susana denied both. Because Susana was not convicted of either incident, the evidence was not admissible in a general credibility attack. Specific instances of the conduct of a witness, other than conviction of a felony or crime involving moral turpitude, may not be inquired into on cross-examination for purposes of attacking the witness's credibility. *See* TEX.R.EVID. 608(b).

The voir dire examination revealed that Susana denied a CPS investigation for driving drunk with a three-year-old in the front seat, an investigation for hitting the children, and driving under the influence with three children in the car. As was the case with the assault upon Claudia, all of these allegations occurred after the death of Jazmine.

Appellant argues that Susana's alleged abuse and endangerment of her children went towards his two-pronged defense that (1) his confession was false and coerced, and (2) that Susana killed Jazmine. But these allegations are not relevant to Appellant's claim that his admission was coerced

and false.  Finding no abuse of discretion, we overrule Point of Error Three.

## Other Witnesses

Appellant complains that the trial court refused to allow him to present evidence that Jazmine's injuries were caused by somebody else.  He perfected a bill of exceptions consisting of testimony by Marisa Alonzo, Crystal Alonzo, Melissa Montelongo, Nancy Jones, Sandra Cruz, Claudia Contreras, and Appellant himself.  The testimony was designed to demonstrate that before and around the time of Jazmine's death, Susana displayed abusive and violent behavior toward her children, family members, and neighbors.

Alternative perpetrator evidence may be admitted to establish a defendant's innocence by showing that someone else committed the crime.  *Wiley v. State*, 74 S.W.3d 399, 406 (Tex.Crim.App. 2002).  But the defendant still must show that his proffered evidence is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the alleged "alternative perpetrator."  *Id*.  Courts must be sensitive to the special problems presented by alternative perpetrator evidence in Rule 403 relevancy rulings.  *See id*.  While Rule 403 favors the admissibility of all relevant evidence, relevant evidence may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.  TEX.R.EVID. 403.; *Hayes v. State*, 85 S.W.3d 809, 815 (Tex.Crim.App. 2002).

Appellant's proffered witness testimony may have shown that Susana verbally and physically abused her children, but it provides no evidence on its own or in combination with other evidence between the crime charged and Susana as the alternative perpetrator.  *See Wiley*, 74 S.W.3d at 406. Appellant suggests that the testimony of Dr. Karen Griest raised the possibility that Jazmine was injured before the time that Appellant babysat for her.  But the testimony by the other witnesses

offers no corroboration to Dr. Griest's theory. To the extent that the proffered evidence would have been even marginally relevant to the defense theory, the trial court could have reasonably concluded that its probative value was substantially outweighed by confusing the issues or misleading the jury. We overrule Point of Error Four.

## Cumulative Error

In Point of Error Five, Appellant complains that the court deprived him of a complete defense by: (1) limiting the testimony of Dr. Ofshe about the circumstances of the police interrogation, (2) refusing to allow Appellant to effectively cross-examine Susana, and (3) refusing to allow him to present evidence that Jazmine's injuries were possibly caused by someone else.

"A defendant has a fundamental right to present evidence of a defense as long as the evidence is relevant and is not excluded by an established evidentiary rule." *Miller v. State*, 36 S.W.3d 503, 507 (Tex.Crim.App. 2001), *citing Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). The exclusion of defensive evidence rises to the level of constitutional error if the evidence "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier v. State*, 68 S.W.3d 657, 665 (Tex.Crim.App. 2002). Non-errors may not in their cumulative effect cause error. *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex.Crim.App. 1999).

In the previous four issues, we concluded that the trial court's evidentiary rulings were correct. We found that the court correctly excluded the evidence because it was either not relevant or it was excluded by an established evidentiary rule. *See Miller*, 36 S.W.3d at 507. Because non-errors may not in their cumulative effect cause error, we overrule Point of Error Five.

## CHARGE ERROR

In his next two issues, Appellant alleges charge error. Point of Error Six addresses

instructions on voluntariness of a confession. Point of Error Seven addresses juror unanimity and due process violations.

*Standard of Review*

We review charge error using a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex.Crim.App. 1994). First, we determine whether error occurred; if so, we evaluate whether sufficient harm resulted from the error to require reversal. *Id*. at 731-32. Error in the charge, if timely objected to in the trial court, requires reversal if the error is "calculated to injure the rights of defendant," meaning that there must be some harm to the accused from the error. TEX.CODE CRIM.PROC.ANN. art. 36.19 (Vernon 2006); *see Abdnor*, 871 S.W.2d at 731-32; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985)(op. on reh'g). A properly preserved error will call for reversal as long as the error is not harmless. *Almanza*, 686 S.W.2d at 171. "[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id*. The defendant has the burden to persuade the reviewing court that he suffered some actual harm. *Abdnor*, 871 S.W.2d at 732; *LaPoint v. State*, 750 S.W.2d 180, 191 (Tex.Crim.App. 1988)(op. on reh'g).

*Voluntariness*

The charge included a general instruction on the law of voluntariness of a confession:

The Court has admitted into evidence before you the alleged written statement of the Defendant, and you are instructed that before you may consider the same for any purpose you must first believe from the evidence beyond a reasonable doubt that the same was freely and voluntarily made by the Defendant without compulsion or persuasion and signed by him; and that prior thereto the Defendant had been warned by the person to whom the statement was made that:

(1)     he had the right to remain silent and not make any statement at all and that any statement he made may be used against him at trial; and

(2)     any statement he made may be used as evidence against him in court; and

(3)     he had the right to have a lawyer present to advise him prior to and during any questioning; and

(4)     if he was unable to employ a lawyer, he had the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5)     he had the right to terminate the interview at any time;

and that the Defendant prior to and during the making of the statement, knowingly, intelligently and voluntarily waived these rights; but if you do not so believe, or if you have a reasonable doubt thereof, then the alleged statement is entirely withdrawn from your consideration and you shall not give the same any force of effect whatever or consider it as any evidence of the Defendant's guilt in this case, and you shall not consider any evidence obtained as a result thereof, if any.

Appellant submitted a written request for a more specific application of the law of confessions to the

facts of this case:

You are instructed that unless you believe from the evidence beyond a reasonable doubt that the alleged second confession or statement given to Detective Aguirre while Saul Contreras was confined at the Crimes Against Person's offices was freely and voluntarily made by Saul Contreras without compulsion or persuasion, or if you have a reasonable doubt thereof, you shall not consider such alleged statement or confession for any purpose nor any evidence obtained as a result thereof.

In this case, if you find from the evidence, or if you have a reasonable doubt thereof, that prior to the giving of the alleged confession of the defendant, if any the officer having him in charge questioned him persistently over a prolonged period of time without allowing him to contact his wife, attorney, or any other relative and without taking him before a magistrate without unnecessary delay then you will wholly disregard the alleged confession and not consider it for any purpose nor any evidence obtained as a result thereof.

Further, if you find that Saul Contreras requested an attorney or that the interrogation cease you are instructed that such confession was obtained in violation of the law and you shall wholly disregard the alleged confession and not consider it for any purpose nor any evidence obtained as a result thereof.

If you find from the evidence, or you have a reasonable doubt thereof, that at the time of the statement of Saul Contreras, if such statement there was, that Saul Contreras had been threatened with his wife's prosecution and losing his children and such

threat reduced Saul Contreras to such a condition of physical and mental impairment such as to render such admission, if any, not wholly voluntary, then you will completely disregard such statement as evidence for any purpose nor will you consider, for any purpose any evidence obtained by the police as a result thereof.

The court denied Appellant's written request.

Appellant claims that he was entitled to an instruction under Article 38.23(a). Section 6 of Article 38.22 explains the procedure for determining whether an accused's statement was voluntary. *See* TEX.CODE CRIM.PROC.ANN. art. 38.22, § 6 (Vernon 2005). In all cases in which a question is raised as to the voluntariness of a statement, the trial court must make an independent finding in the absence of the jury and enter an order stating its conclusion. *See* TEX.CODE CRIM.PROC.ANN. art. 38.22, § 6; *Vazquez v. State*, 225 S.W.3d 541, 545 (Tex.Crim.App. 2007). If the trial court determines that the statement was voluntary, the issue may be submitted to the jury. Article 38.22, § 6 states:

> Upon the finding by the judge as a matter of law and fact that the statement was voluntarily made, evidence pertaining to such matter may be submitted to the jury and it shall be instructed that unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose nor any evidence obtained as a result thereof.

Voluntariness should be submitted to the jury if, based on the evidence presented at trial, a reasonable jury could conclude that the statement was involuntary. *Vazquez*, 225 S.W.3d at 545. Article 38.22, § 7 reads:

> When the issue is raised by the evidence, the trial judge shall appropriately instruct the jury, *generally*, on the law pertaining to such statement. [Emphasis added].

The court may also instruct the jury to disregard statements of the accused if the jury believes or has a reasonable doubt that the evidence was obtained in violation of a defendant's constitutional rights. *See* TEX.CODE CRIM.PROC.ANN. art. 38.23(a); *Vazquez*, 225 S.W.3d at 545. When a fact issue is raised concerning the validity of consent to a search, the defendant has a statutory right to

have the jury charged on the issue. *See Stone v. State*, 703 S.W.2d 652, 655 (Tex.Crim.App. 1986). Under Article 38.23, the trial court must provide the jury not only with abstract statements of the applicable law, but must also clearly apply the law to the very facts of the case. *Riley v. State* 830 S.W.2d 584, 586-87 (Tex.Crim.App. 1992). A jury instruction is allowed under Article 38.23(a) "only if there is a factual dispute as to how the evidence was obtained." *Vazquez*, 225 S.W.3d at 545, *citing Thomas v. State*, 723 S.W.2d 696, 707 (Tex.Crim.App. 1986); *see also*, *Bell v. State*, 938 S.W.2d 35, 48 (Tex.Crim.App. 1996). If there is no factual issue of how evidence was obtained, there is only an issue of law, which is not for a jury to decide under Article 38.23(a). *Vazquez*, 225 S.W.3d at 545.

Here, Appellant asserts he was denied a proper application paragraph on the voluntariness of his statement under Article 38.23(a). We disagree. Appellant's receipt of the Article 38.22 warnings was never an issue. Detective Aguirre testified that Appellant read his rights off a *Miranda* card and Appellant testified that he had initialed his rights on the second statement that he had signed. Appellant notes that he had only about fifteen minutes of sleep since his interrogation the night before. He was interrogated by two detectives and was accused of lying. He was threatened with his wife going to jail. Detective Ochoa was yelling at him, banging his hand on the desk, getting in his face, and was so close to Appellant that he could feel his breath. The detectives also refused his request to speak to his wife, brother, and lawyer. These are all facts from which a jury, viewing the totality of the circumstances, could have found that the statement was not voluntarily made. The evidence therefore meets the test for an instruction under Article 38.22. See *Vazquez*, 225 S.W.3d at 544. The exclusionary rule, Article 38.23(a), is allowed "only if there is a factual dispute as to how the evidence was obtained." *See Vazquez*, 225 S.W.3d at 544. Here, it is undisputed that Appellant signed the second statement and was given his *Miranda* warnings.

Because Appellant was not entitled to an Article 38.23(a) instruction, under Article 38.22 the court properly gave a general instruction on the voluntariness of Appellant's confession. *See* TEX.CODE CRIM.PROC.ANN. art. 38.22, § 7. Because the general instruction was adequate, we overrule Point of Error Six.

*Right to Unanimous Verdict*

In Point of Error Seven, Appellant complains that he was convicted by a non-unanimous verdict in violation of this rights to due process under the Fourteenth Amendment and his rights to a unanimous verdict under the United States and Texas Constitutions.

As we have noted, Appellant was indicted for capital murder (Count I) and felony murder (Count II). Count two read:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 28th day of November, 2003 in El Paso County, Texas, the Defendant, SAUL CONTRERAS, did *intentionally, knowingly, recklessly, or by criminal negligence*, by act cause bodily injury to JAZMINE CONTRERAS, a child younger than 15 years of age, by then and there striking Jasmine Contreras about the body with the hand of the defendant, and while in the course of and in furtherance of the commission of said offense did then and there commit an act clearly dangerous to human life, and which caused the death of and individual, namely, Jazmine Contreras, then you will find the defendant 'guilty' of Murder as alleged in Count 2 the indictment. [Emphasis added].

The jury convicted Appellant of Count II.

Jury unanimity is required in felony cases. *Ngo v. State*, 175 S.W.3d 738, 745 (Tex.Crim.App. 2005). In this context, unanimity means each and every juror agree that the defendant committed the same, single, specific criminal act. *Ngo*, 175 S.W.3d at 745. When reviewing a disjunctive jury charge, we first determine whether the application paragraphs contain different criminal acts or whether they merely instruct as to different means of committing a single offense. *Ngo*, 175 S.W.3d at 744; *Milam v. State*, 2006 WL 304528 at * 7 (Tex.App.--El Paso 2006,

pet. ref'd)(not designated for publication); *Holford v. State*, 177 S.W.3d 454 (Tex.App.--Houston [1st Dist.] 2005, pet. ref'd). If the disjunctive paragraphs merely inform the jury of different means of committing a single offense, then the jury does not have to unanimously agree on which alternative means the defendant used to commit the offense. *Milam,* 2006 WL 304528 at *7; *Holford*, 177 S.W.3d at 462. If the charge describes *how* the defendant committed the criminal act as opposed to *whether* he committed the act, then jury unanimity is not required. *Ngo*, 175 S.W.3d at 745-46; *see Jefferson v. State*, 189 S.W.3d 305 (Tex.Crim.App. 2006). To determine what criminal act has been prohibited by statute, a handy rule of thumb is to look to the statutory verb defining the criminal act. *Ngo*, 175 S.W.3d at 745 n.24.

We turn to two recent cases decided by the Criminal Court of Appeals involving prosecution for injury to a child. *See Jefferson v. State*, 189 S.W.3d 305 (Tex.Crim.App. 2006); *Stuhler v. State*, 218 S.W.3d 706 (Tex.Crim.App. 2007). In *Jefferson*, the court decided whether the charge should have required the jury to make a unanimous finding as to whether the defendant caused the injury by acts or by omission. 189 S.W.3d at 306. The court reasoned that whether the jury must unanimously find that injury to a child was accomplished by act or omission was primarily a question of legislative intent. *Id*. at 312, *citing Richardson v. United States*, 526 U.S. 813, 817-18, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999)(noting that deciding what level of specificity is required in a jury verdict to satisfy the requirement of jury unanimity is a function of statutory construction). The court found injury to a child[3] to be a "result of conduct" offense, which does not specify the "nature of

---

[3] TEX.PENAL CODE ANN. § 22.04 (Vernon 2003) defines the offense of injury to a child in relevant part as:

(a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual:
    (1) serious bodily injury;
    (2) serious mental deficiency, impairment, or injury; or
    (3) bodily injury.

conduct" by which the result is caused. *Id*. It did not matter whether Jefferson caused the injury by act or omission because it was not elemental, since the statute did not make the "nature of conduct" of any consequence. *Id*.

Conversely, the court in *Stuhler* used the reasoning articulated in *Jefferson* to hold that the jury should have been required to unanimously agree that the defendant caused either serious bodily injury or serious mental deficiency, impairment, or injury. 218 S.W.3d at 717. The court found that in Section 22.04(a) of the Texas Penal Code, the main verb defining the offense of injury to a child is "causes." *Id*. at 718. Further, the direct object of that main verb is, variously, "serious bodily injury," "serious mental deficiency, impairment, or injury," or plain "bodily injury." *Id*. The Legislature thus defined the offense of injury to a child according to the kind and degree of injury that results. *Id*. The court concluded that the Legislature intended the separate results spelled out in the various subsections of the statute to be elemental and thus it required jury unanimity. *Id*. at 719.

The felony murder statute provides:

> A person commits an offense if he commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

TEX.PENAL CODE ANN. § 19.02(b)(3)(Vernon 2003). In *White v. State*, the court determined whether the requirement of a unanimous jury verdict includes a requirement of unanimity on what predicate felony the defendant committed in order to be convicted. *White*, 208 S.W.3d 467, 468

---

(b) An omission that causes a condition described by Subsection (a)(1) through (a)(3) is conduct constituting an offense under this section if:
    (1) the actor has a legal or statutory duty to act; or
    (2) the actor has assumed care, custody, or control of a child, elderly individual, or disabled individual.

(Tex.Crim.App. 2006). There, the indictment alleged in one paragraph that the defendant caused the victim's death during the commission of the state-jail felony of unauthorized use of a vehicle, and in another paragraph, it alleged that defendant caused the victim's death during the commission of the state-jail felony of evading arrest or detention in a vehicle. *Id.* The charge authorized the jury to convict the defendant if it unanimously found that he caused the victim's death during the commission of either one of the two felonies without having to unanimously find which felony he committed. *Id.* The court held that when an indictment alleges multiple felonies in a prosecution under Section 19.02(b), the specifically named felonies are not elements about which a jury must be unanimous. *Id.* at 469. The felonies constitute the manner or means that make up the "felony" element of Section 19.02(b)(3). *Id.*, *citing Jefferson*, 189 S.W.3d at 312. The court further held that dispensing with jury unanimity on the felonies alleged does not violate due process because felonies were "basically morally and conceptually equivalent." *Id.*, *citing Jefferson*, 189 S.W.3d at 313-14.

In *Yost v. State*, 222 S.W.3d 865 (Tex.App.--Houston [14th Dist.] 2007, pet. ref'd), the jury was not required to return a unanimous verdict as to whether the defendant committed murder by intentionally or knowingly causing the victim's death or by intending to cause serious bodily injury and committing an act clearly dangerous to human life that caused the victim's death. The statute under which the defendant was charged did not describe different offenses but merely set forth different methods of committing murder. Thus, the jurors were not required to agree on the defendant's specific mental state but only that the defendant had one of the alternate mental states that satisfied the element of intent under the statute. *Yost*, 222 S.W.3d at 865; TEX.PENAL CODE ANN. § 19.02 (b)(1)(2).

Here, Appellant was charged and convicted of felony murder under Section 19.02(b)(3) of the Texas Penal Code. The underlying felony is the violation of Section 22.04. Appellant argues

that under Section 22.04, the Legislature purposefully allocated different levels of culpability by distinguishing the punishment for intentionally or knowingly injuring a child from injury due to recklessness or criminal negligence. Under Section 22.04(f), injury to a child committed intentionally or knowingly is a third degree felony. *See* TEX.PENAL CODE ANN. § 22.04(f). In two different sections, the statute provides that recklessness or criminal negligence is a state-jail felony. *See* TEX.PENAL CODE ANN. § 22.04(g). Appellant argues that because the Legislature has provided different punishment ranges depending on the mental state alleged, the jury should be unanimous about the underlying mental state. The law does not support Appellant's position.

Under *Jefferson*, the first step in the analysis is to look at the Legislative intent. *See Jefferson*, 189 S.W.3d at 312. In *White*, the court found that when an indictment alleges multiple felonies in a prosecution under Section 19.02(b), the specifically named felonies are not elements about which a jury must be unanimous. The felonies constitute the manner or means that make up the "felony" element of Section 19.02(b)(3). *See White*, 208 S.W.3d at 469. Under *White*, it does not matter that the Legislature allocated different punishment ranges for different mental states in Section 22.04, because the language of Section 19.02(b)(3) clearly states all that is necessary for a violation is "a felony, other than manslaughter . . . ." *See* TEX.PENAL CODE ANN. § 19.02(b)(3). Appellant was charged with felony murder under Section 19.02, and the language of that statute does not distinguish between requisite mental states necessary for the violation of the statute.

*Violation of Due Process*

Appellant avers that he was denied due process because the range of mental states submitted to the jury are not conceptually and morally equivalent. In *Jefferson*, the court addressed the additional question of whether the legislative determination to dispense with jury unanimity withstood constitutional due process concerns. 189 S.W.3d at 313. In Texas, the right to trial by

jury includes the right to a unanimous jury verdict in a criminal case. TEX.CONST. art. V, § 13; TEX.CODE CRIM.PROC.ANN. arts. 36.29, 37.03. The court implied that there may be a constitutional prohibition against disjunctive allegations submitted to the jury without a unanimity requirement if the acts or omissions that combined to establish the offense are "morally and conceptually equivalent" based upon an analysis suggested by Justice Scalia's concurring opinion in *Schad v. Arizona*, 501 U.S. 624, 648-52, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991).

Justice Scalia's concurrence involved two scenarios. *Schad*, 501 U.S. at 648-52, 111 S.Ct. 2491 (Scalia, J., concurring in part and concurring in judgment). The first involved "novel 'umbrella' crimes (a felony consisting of either robbery or failure to file a tax return) where permitting a 6-to-6 verdict would seem contrary to due process." *Id*. at 650. The second arises when "a woman's charred body has been found in a burned house, and there is ample evidence that the defendant set out to kill her, it would be absurd to set him free because six jurors believe he strangled her to death (and caused the fire accidentally in his hasty escape), while six others believe he left her unconscious and set the fire to kill her." *Id*. The court found it equally absurd to set the defendant free under the facts of that case. *Jefferson*, 189 S.W.3d at 314. For example, six jurors may have believed that the defendant struck the fatal blow to the child while six other jurors may have believed that the defendant failed to pick up the phone to seek medical help for a child who was obviously seriously injured. Accordingly, the court found no due process violation in the disjunctive submission. *Id.*

The facts here more closely resemble the second scenario. The evidence brought forth in this case, namely Appellant's second statement to the police, comprises ample evidence from which a jury could find that Appellant injured and killed the child. Therefore, the distinction between the mental states in Section 22.04 of the Texas Penal Code does not affect the end result or the violation

of Section 19.02(b) of the Texas Penal Code.  It should not matter whether the jury found that Appellant acted knowingly or recklessly as long as they found that Appellant injured the child resulting in a felony.  We overrule Point of Error Seven in its entirety.

## PROSECUTORIAL MISCONDUCT

Finally, Appellant contends the trial court erred when it allowed the prosecutor to repeatedly argue outside the record during the punishment phase in denial of Appellant's rights to confrontation under the Sixth Amendment and Due Process Rights pursuant to the Fourteenth Amendment.

### Standard of Review

Arguments made during summation must be limited to four general:  (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) pleas for law enforcement.  *Cannon v. State*, 668 S.W.2d 401, 404 (Tex.Crim.App. 1984); *Calderon v. State*, 950 S.W.2d 121, 133 (Tex.App.-- El Paso 1997, no pet.).  Even if a prosecutor's comments are deemed impermissible, the error is not reversible unless, in light of the whole record, the argument is extreme or manifestly improper, violative of mandatory statute, or injects new and harmful facts into the trial.  *Todd v. State*, 598 S.W.2d 286, 297 (Tex.Crim.App. 1980).  The comments must be so inflammatory and the effect so prejudicial that a judicial instruction to disregard them would not cure the error.  *Blessing v. State*, 927 S.W.2d 266, 270 (Tex.App.--El Paso 1996, no pet.); *Belton v. State*, 900 S.W.2d 886, 889 (Tex.App.--El Paso 1995, pet. ref'd).

To preserve jury argument error, a contemporaneous objection must be made and an adverse ruling obtained.  TEX.R.APP.P. 33.1(a)(to preserve error for review, a party must object and trial court must explicitly or implicitly make an adverse ruling or refuse to rule on that objection); *Cooks v. State*, 844 S.W.2d 697, 727 (Tex.Crim.App. 1992).  If the trial court sustains the objection, the defendant must then request an instruction to disregard, and, if granted, move for a mistrial.  *Cooks*,

844 S.W.2d at 727-28.  When a defendant fails to object to a jury argument or fails to pursue an objection to an adverse ruling, he forfeits his right to complain about the jury argument on appeal. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996), *cert. denied*, 520 U.S. 1173, 117 S.Ct. 1442, 137 L.Ed.2d 548 (1997).

*Watching Jazmine Die*

During closing argument, the prosecutor argued that Appellant watched Jazmine die. Appellant objected and the court sustained the objection. Appellant objected again after the prosecutor continued with a similar argument. The court sustained the objection.  Appellant then asked that the court strike the comment from the record and moved for a mistrial.  The court struck the comment and instructed the jury to disregard it.  The motion for mistrial was denied.

We conclude that the comments made by the prosecutor during closing argument were not so inflammatory and the effect not so prejudicial that the instruction disregard was ineffective. *See Todd*, 598 S.W.2d at 297.  During trial, Dr. Contin testified that Jazmine would have been immediately incapacitated upon receiving her injuries and that she would have died between fifteen minutes and one hour thereafter.  In Appellant's second statement, he acknowledged that after he struck Jazmine, he changed her diaper and took her to bed, where she just looked at him and moaned. This evidence allows for a reasonable inference that Appellant watched Jazmine as she lay dying in her bed.

*Appellant as Unforseen Danger*

Appellant complains that the prosecutor was allowed to argue that the lack of criminal history and the lack of a violent past made Appellant more of a risk to the community.  He suggests that although the court sustained eleven objections, its instructions to disregard were either weak or inadequate:

The jury is instructed to disregard the statement. Ladies and Gentlemen of the jury, whatever the attorneys say is not evidence. Keep that in mind. You have heard all the evidence at the punishment phase.

In light of the entire record, the argument that Appellant is a future danger is not extreme or manifestly improper, violative of mandatory statute, nor does it inject new and harmful facts into the trial. The comments were not so inflammatory and the effect so prejudicial that a judicial instruction to disregard them would not cure the error. Accordingly, we overrule Point of Error Eight and affirm the judgment of the trial court.

January 8, 2009

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J., not participating

(Do Not Publish)