

# In the Court of Criminal Appeals of Texas

---

No. PD-0759-21

---

JOSE JUAN CHAVEZ,

*Appellant*

v.

THE STATE OF TEXAS

---

On State's Petition for Discretionary Review
From the Fourteenth Court of Appeals
Chambers County

---

YEARY, J., filed a dissenting opinion.

In this case, the Court wrestles with the correct standard for determining when a trial court should give a jury an instruction on a lesser-included offense in response to a defendant's request. The Court

chooses to hold fast to its long-employed, court-created formula requiring "evidence from which a rational jury could find the defendant guilty of only the lesser offense" with the understanding that "the guilty-only requirement is met [only when] there is affirmative evidence of a factual dispute that raises the lesser offense and rebuts or negates other evidence establishing the greater offense." Majority at 6. Judge Keel's concurrence, for its part, urges further restriction of the circumstances under which such an instruction is appropriate. But having been called upon to consider the question, I am drawn to a different alternative—one that would more closely adhere to the requirements of our statutory law on the issue.

Appellant was charged with capital murder. The State argued that he acted as a party to the conduct of another (Brandon Flores) in the killing of two teenage gang members. Appellant requested lesser-included-offense instructions for kidnapping and felony murder, and the court of appeals concluded that he should have received them. *Chavez v. State*, 651 S.W.3d 140, 146 (Tex. App.—Houston [14th] 2021). Today the Court reverses the judgment of the court of appeals, holding that the trial court did not err by refusing the lesser-included-offense instructions requested by Appellant. I disagree. I would affirm that judgment for the reasons set forth in this opinion. Because the Court does not, I respectfully dissent.

## I. HISTORY OF THE LESSER-INCLUDED-OFFENSE-INSTRUCTION TEST

The Court correctly lays out the two-prong test it has historically used to determine when a trial court is required to instruct a jury on a lesser-included offense upon a defendant's request. Majority Opinion at

6. But simply stating this test in its current form reveals only part of the picture and risks imparting only a partial understanding of the test's meaning. The test has been through a long journey of development.

This Court announced the first iteration of the test in 1952. That year, in *Daywood v. State*, the appellant challenged the trial court's refusal to instruct the jury on aggravated assault, a lesser-included offense of the charged offense. Without citing any authority, this Court responded with the following:

> At this juncture, it will be noted that, merely because a lesser offense is included within the proof of a greater offense, a charge on the lesser is not required unless there is testimony raising the issue that the appellant, if guilty at all, is guilty only of a lesser offense included in the greater offense charged.

*Daywood v. State*, 248 S.W.2d 479, 481, 157 Tex. Crim. 266, 269 (1952).

Following *Daywood*, this Court latched onto the "guilty only" test when faced with the issue of whether a requested lesser-included-offense instruction was required. *See, e.g.*, *Hale v. State,* 164 Tex. Crim. 482, 486, 300 S.W.2d 75, 77 (1957) (repeating the *Daywood* "guilty only" test for when a lesser-included-offense instruction is required); *Torres v. State*, 493 S.W.2d 874, 875 (Tex. Crim. App. 1973) (same); *McBrayer v. State*, 504 S.W.2d 445, 447 (Tex. Crim. App. 1974) (same); *McCardell v. State*, 557 S.W.2d 289, 290 (Tex. Crim. App. 1977) (same). It is easy to allow this stage in the test's development—the eager acceptance and fervent repetition of *Daywood*—to overshadow the questionable nature of the test's origin. Today's "guilty only" test is a creation of this Court. Its life support is not a statute or other law, but only the unsupported words of this Court, blindly followed and repeated frequently enough to

blur its dubious birth. The Legislature has never codified the test as it was framed in *Daywood* or in the two-prong formulation familiar today.

Along with this eager judicial acceptance of the Court's pronouncement in *Daywood*, courts have over the years created slight variations and clarifications to the original language. For example, in *Dovalina v. State*, this Court quoted the *Daywood* "guilty only" test and then rephrased the test to focus on "evidence" rather than just "testimony"; "There is no *evidence* that he did not intend to kill the officer. There is nothing which would show that he would be guilty of only the lesser offense of aggravated assault." *Dovalina v. State*, 564 S.W.2d 378, 383 (Tex. Crim. App. 1978) (emphasis added).

By the end of the era of *Daywood* and its progeny, the test had matured to be explicitly organized as a two-prong test, the second step of which focused on the "evidence" presented at trial. The test is sometimes referred to as the "*Royster-Aguilar* test," based on the names of the cases which cemented the practice of separating the two steps of the test. It went like this:

> [I]n determining whether a charge on a lesser included offense is required, a two step analysis is to be used. First, the lesser included offense must be included within the proof necessary to establish the offense charged. Secondly, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense.

*Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981); *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985).

The test reached a hurdle in its journey with the question of how the *Royster-Aguilar* test related to the federal standard for when due process requires a requested instruction on a lesser-included offense. In

*Cordova v. Lynaugh*, the Fifth Circuit Court of Appeals addressed the federal due process issue and provided the following test:

> [A] lesser included offense instruction should be given 'if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater.'

*Cordova v. Lynaugh*, 838 F.2d 764, 767 (5th Cir. 1988) (quoting *Hopper v. Evans*, 456 U.S. 605 (1982)). In a footnote, the Fifth Circuit observed that "[t]he second prong [of Texas's *Royster-Aguilar* test] that 'there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense,' seems very similar to the federal standard." *Id.* at n.3. However, the Court made clear that it was not addressing the Texas standard and was only concerned with whether the Fifth Amendment Due Process Clause required the lesser-included-offense instruction. *Id.*

This Court answered the lingering questions about the relationship between the federal and Texas standards in *Rousseau v. State*. There, the appellant called into question the propriety of the *Royster-Aguilar* test in light of *Cordova*. *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993). In its analysis, this Court pointed out that the major difference between the two standards is the federal standard's reference to the rational findings of the jury. *Id.* The Court then decided to refine the two-prong test to mirror the federal standard. Accordingly, the Court provided the following as the more appropriate language:

> [F]irst, the lesser included offense must be included within the proof necessary to establish the offense charged, and, second, some evidence must exist in the record *that would*

> *permit a jury rationally to find* that if the defendant is guilty, he is guilty only of the lesser offense.

*Rousseau*, 855 S.W.2d at 673.

In addition to refining the two-prong test to focus on the rational findings of the jury in light of *Cordova*, this Court has provided various supporting explanations that frequently follow any recitation of the two-prong test. For example, one of the common rules accompanying the test is that the second prong of the analysis requires a consideration of all of the evidence admitted at trial, regardless of which party admitted the evidence. *See, e.g., Bullock v. State*, 509 S.W.3d 921, 925 (Tex. Crim. App. 2016) ("[T]he second step requires examining all the evidence admitted at trial, not just the evidence presented by the defendant."); *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011) ("We consider all of the evidence admitted at trial, not just the evidence presented by the defendant."); *Bell v. State*, 693 S.W.2d 434, 442 (Tex. Crim. App. 1985) ("If evidence from *any source* raises the issue of a lesser included offense, the charge must be given.") (emphasis added).

Additionally, this Court has repeatedly emphasized that what the second prong requires is that all the evidence admitted at trial would allow a rational jury to find the defendant guilty of the lesser-included offense rather than the charged offense. The Court has frequently explained that the second prong requires that "[t]he evidence must establish that the lesser-included offense is a valid, rational alternative to the charged offense." *Bullock*, 509 S.W.3d at 925; *see also Rice v. State,* 333 S.W.3d 140, 145 (Tex. Crim. App. 2011) (using the same language to help explain the second prong); *Hall v. State*, 225 S.W.3d 524, 536

(Tex. Crim. App. 2007) (same); *Forest v. State*, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999) (same).

Another elaboration on the meaning of the second prong of the *Royster-Aguilar* test has been that, for a requested lesser-included-offense instruction to be required, "[t]here must be some evidence directly germane to the lesser-included offense for the finder of fact to consider[.]" *Wortham v. State*, 412 S.W.3d 552, 557 (Tex. Crim. App. 2013) (quoting *Goad* 354 S.W.3d at 446). This evidence, the Court has said, "cannot be mere speculation—it must consist of affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Id.* And notably, some relevant cases that call for "affirmative evidence" provide *further* elaboration. In *Schweinle v. State*, for example, the Court explained that there are *two* ways in which evidence may raise a lesser-included offense: The evidence "*either* affirmatively refutes or negates an element establishing the greater offense, *or* the evidence on the issue is subject to two different interpretations, and one of the interpretations negates or rebuts an element of the greater." *Schweinle v. State*, 915 S.W.2d 17, 19 (Tex. Crim. App. 1996).

## II. THE COURT'S OPINION V. JUDGE KEEL'S OPINION

Judge Keel's concurring opinion today would have the Court elevate the first "affirmative evidence" alternative from *Schweinle* (and like cases) to the level of sacrosanct, while apparently relegating the "different interpretations" alternative (what it calls the "possible-disbelief version of the guilty-only test") to the jurisprudential scrapheap. *See* Judge Keel's Concurring Opinion at 4 (contrasting what

it calls the "possible-disbelief version" of the "guilty-only" test with what it calls the "factual-dispute version"); *id.* at 7 (advocating that the Court "should . . . adhere to the factual-dispute version" of the guilty-only test and "put the kibosh on" the possible-disbelief version). It would essentially hold that the record must *always* contain what the cases call "affirmative evidence" to refute the State's evidence of the element that elevates the lesser-included offense to the greater offense before a lesser-included instruction will be required upon a party's request. *Id.*

For its part, the majority today does not expressly reject the "different interpretations" aspect of the *Schweinle* formulation of *Royster-Aguillar*'s second prong. But it does declare that "mere disbelief of evidence" establishing guilt for the greater offense is "insufficient" to satisfy that prong. *Id.* at 9.

I believe it would be a mistake, as Judge Keel's concurring opinion would have the Court do, to make "affirmative evidence" the exclusive standard for determining the second prong of the *Royster-Aguilar* test for determining the availability of a lesser-included-offense instruction.[1]

---

[1] Throughout the development of the two-prong test, various judges have expressed alternative ways to characterize the "guilty only" prong that do not require a showing of affirmative evidence negating an element of the greater offense. In *Day v. State*, 532 S.W.2d 302 (Tex. Crim. App. 1975), for example, this Court held that it was reversible error for the trial court to refuse to instruct the jury on the lesser-included offense of criminal trespass. The element distinguishing the lesser offense of criminal trespass from the charged offense of burglary was the intent to commit theft. In Judge Roberts's concurrence, he clarified that the reason he agreed with the majority's holding was that "[s]ince this [distinguishing] element was *not conclusively established*, the issue of criminal trespass was raised." *Day*, 532 S.W.2d at 308 (Roberts, J., concurring) (emphasis added). Judge Roberts, clearly, did not think that the distinguishing element had to be rebutted with "affirmative evidence" in order for the lesser-included offense to be raised. For Judge

Indeed, as I explain in Part IV of this dissent, adopting that as our exclusive standard would impose an impermissible burden of production on the defendant to negate an element of the greater offense. Moreover, unlike the majority today, I would not so readily reject "disbelief" as a basis for determining whether a lesser-included instruction should be submitted. So long as the record presents a rational basis for a jury to "disbelieve" the State's evidence of the element that elevates the offense from the lesser to the greater, I believe it must be said that the lesser-included-offense instruction must be submitted as "the law of the case" under our statutory scheme.

### III. WE SHOULD TAKE OUR LEAD FROM THE STATUTES

Over the course of years, as it too often seems to do, the Court has vastly overcomplicated the question of when a trial court must authorize a jury to convict the defendant, where appropriate, of a lesser-included offense. To me, the right answer is a simple matter of statutory construction. Article 36.14 of the Texas Code of Criminal Procedure requires the trial court to instruct the jury on "the law applicable to the case." TEX. CODE CRIM. PROC. art. 36.14. And Article 37.08 provides that "in a prosecution for an offense with lesser included offenses, the jury *may find* the defendant not guilty of the greater offense, but guilty of the lesser included offense." TEX. CODE CRIM. PROC. art. 37.08. So, when the instruction is requested, and the evidence is such that the jury would act rationally to reject the greater offense and find guilt instead for the

---

Roberts, it was enough that the distinguishing element was not conclusively established, meaning that the jury could rationally choose to disbelieve that element to a level of confidence beyond a reasonable doubt.

lesser, an instruction on the lesser is required because it has, by the party's request and the state of the evidence, become "the law applicable to the case."

Of course, a jury should *not* convict of the lesser-included offense when it has been persuaded to a level of confidence beyond a reasonable doubt that the defendant committed the *greater* offense. So, to justify a lesser-included-offense instruction, the record must be such that a jury could rationally find that the defendant is *not* guilty of the greater offense, but that he *is* guilty of the lesser-included offense—hence the "guilty-only" requirement described in the cases.

But, in any case in which the jury could rationally conclude that the State's evidence has failed to prove the elevating element beyond a reasonable doubt, upon request, a trial court must equip the jury to resolve, pursuant to Article 37.08, whether the defendant is instead guilty of a lesser-included offense. To impose a burden on the defendant *always* to produce "affirmative evidence" before he may obtain such an instruction, even when the State's evidence with respect to the elevating element is *not* (as Judge Roberts put it, *see* note 1, *ante*) "conclusive," is simply to fail to instruct the jury on "the law applicable to the case." Both the majority opinion and Judge Keel's concurring opinion today grievously err to conclude otherwise.

### IV. "AFFIRMATIVE EVIDENCE": AN INAPPROPRIATE BURDEN OF PRODUCTION NOT STATUTORILY REQUIRED

Determining when a trial court is required to grant a requested lesser-included-offense instruction must begin with consideration of relevant statutes. Article 36.14 requires a trial court to "deliver to the

jury . . . a written charge distinctly setting forth the law applicable to the case[.]" TEX. CODE CRIM. PROC. art. 36.14. Article 37.08 of the Texas Code of Criminal Procedure also provides that "[i]n a prosecution for an offense with lesser included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense." TEX. CODE CRIM. PROC. art. 37.08. So, the question finally ripens to this: When does a lesser-included offense amount to "the law applicable to the case"?

Whether a trial court must submit an instruction on a lesser-included offense as reflective of "the law applicable to the case[,]" the Court has said, is a strategic matter that depends upon whether one of the parties requests it. *Tolbert v. State*, 306 S.W.3d 776, 780–81 (Tex. Crim. App. 2010). If the *defendant* asks for a lesser-included-offense instruction, according to the Court, he must persuade the trial court that it is "the law applicable to the case" by satisfying both prongs of the *Royster-Aguilar* test. This includes a showing under the second prong that the evidence is such that a rational jury could conclude that he is "guilty only" of the lesser offense. But, in *Grey v. State*, 298 S.W.3d 644 (Tex. Crim. App. 2009), the Court decided that, when it is the *State* that seeks the lesser-included-offense instruction, it need only satisfy the *first* prong of the *Royster-Aguilar* test before an instruction on the lesser-included offense becomes "the law applicable to the case." *Id.* at 645 (holding that the State is "not bound" by the second prong of the *Royster-Aguilar* test).

On a certain level, this seems to make good sense. Anytime the State produces evidence sufficient to establish a *prima facie* case for the

element that elevates the lesser-included offense to the level of the greater offense,[2] it obviously hopes to persuade the jury of the verity of that evidence beyond a reasonable doubt. But just because the State has satisfied its burden of *production* with respect to that distinguishing element does not necessarily mean that it can expect the jury inevitably to find that it has also satisfied its burden of *persuasion* regarding that element. *See Grey*, 298 S.W.3d at 650 ("[I]t is easy to see how a jury might not be willing to find that a person's hand is a deadly weapon, despite all the evidence in favor of that proposition."). A rational juror might yet harbor a legitimate reasonable doubt with respect to the elevating element, even in the face of evidence that would rationally support that element beyond a reasonable doubt. *See* TEX. CODE CRIM. PROC. art. 36.13 ("Unless otherwise provided in this Code, the jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby."); and art. 38.04 ("The jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony, except where it is provided by law that proof of any particular fact is to be taken as either conclusive or presumptive proof of the existence of another fact, or where the law directs that a certain degree of weight is to be attached to a certain species of evidence.").

Accordingly, the prosecutor who has some lingering doubt about how a jury might assess the weight or credibility of his elevating evidence may not want to risk an acquittal. So, the Court has said, in

---

[2] A *prima facie* case is "[a] party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." BLACK'S LAW DICTIONARY 1441 (11th ed. 2019). In other words, it is the production of enough evidence to survive a motion for instructed verdict.

the interest of avoiding even the possibility of an "outright acquittal," the State is entitled to obtain a lesser-included-offense instruction. That way, it gives the rational jury—the jury that may yet have a reasonable doubt about the State's evidence of the elevating element—the option of acquitting of the greater offense and convicting of the lesser-included.[3] *Grey*, 298 S.W.3d at 650.

What Judge Keel's concurring opinion would require today is, considering what the Court has said in *Grey*, a stark anomaly. What it would essentially hold is that, when it is the *defendant* who requests the lesser-included-offense instruction, it can only become "the law applicable to the case" if, once the State has satisfied *its* burden of *production* on the elevating element, the defendant then satisfies *a counter burden of production of his own*. The defendant must *refute* the State's evidence with some "affirmative evidence" of his *own* to show that he is "guilty only" of the lesser-included offense.[4] I agree, of course,

---

[3] The Court recently reiterated that, by statute, Texas is a so-called "acquittal-first" (or, perhaps a "modified acquittal-first") jurisdiction. *Sandoval v. State*, ___ S.W.3d ___, No. AP-77,081, 2022 WL 17484313, at *28 (Tex. Crim. App. Dec. 7, 2022). Accordingly, it is appropriate to instruct a jury that, when a lesser-included-offense instruction is given, the jury must first make a determination whether the defendant must be acquitted of the greater offense, and only in the event that it *does* acquit of the greater offense may it proceed to make a determination whether he may nevertheless be guilty of the lesser-included offense. *Id*. at *26; *see also Ex parte Covarrubias*, ___, S.W.3d ___, No. WR-82,509-03, 2023 WL 379593, at *9 (Tex. Crim. App. Jan. 25, 2023) (noting that, in *Sandoval*, "we recently held that a jury must be required to agree on an acquittal of the greater offense before it can return a conviction on a lesser-included offense.") (internal quotation marks omitted).

[4] A burden of production does not necessarily mean that the party bearing it actually has to *produce* evidence in support of his burden. Rather, it simply means that if *no* evidence is produced from *any* source to satisfy the

that whenever a defendant *can* produce such evidence, he is certainly entitled to the instruction under the *Royster-Aguilar* test, just as some of our cases have said. *E.g.*, *Schweinle*, 915 S.W.2d at 19. But I disagree with the concurring opinion that this should be the *only* way that a lesser-included offense becomes "the law applicable to the case" upon a defensive request. And, rightly, so does the Court today, at least consistent with what it has said in *Grey*.

By foisting such a counter burden of production on the defendant to produce "affirmative evidence" that he is guilty only of the lesser offense, Judge Keel's concurring opinion would essentially hold that, at least when it is the *defense* seeking the instruction, the State's evidence with respect to the elevating element *is conclusive*—that it will *necessarily* also satisfy the State's ultimate burden of *persuasion*—unless the defendant satisfies an independent burden of *production* to show otherwise. The underlying presumption must be that—contrary to the premise of *Grey*—a jury is *not* entitled simply to reject the State's evidence to establish the elevating element, even if it would be rational for that jury to harbor a reasonable doubt about it. Such a holding stops just short of constituting an instructed verdict in the State's favor, at least with respect to the elevating element.[5] That, of course, would be patently unconstitutional. *See Middleton v. McNeil*, 541 U.S. 433, 437

---

burden, the party who bears the burden of production will lose. *Krajcovic v. State*, 393 S.W.3d 282, 288 (Tex. Crim. App. 2013) (Price, J., concurring).

[5] The jury is not told that it *must find* the elevating element to be *true* in assessing the defendant's guilt or innocence for the *charged offense*, of course. But it is effectively disallowed from registering any reasonable doubt with respect to that element for purposes of determining whether it may consider the defendant's possible liability for the lesser-included offense.

(2004) ("In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement."). And in any event, it is utterly irreconcilable with the logic of *Grey*.

As for the majority's expressed view today that "mere disbelief" of the State's evidence of the elevating element is insufficient to support a lesser-included-offense instruction, Majority Opinion at 9, I must reject that too. The question should simply be whether, from *all* the evidence in the case—from any source—a rational jury could harbor a reasonable doubt with respect to the element that elevates the offense from the lesser-included offense to the greater-charged offense. This includes asking whether a rational jury could simply find itself unpersuaded—at least *to a level of confidence beyond a reasonable doubt*—by the State's evidence (if that is the only evidence there *is*) of that elevating element. So long as the potential for doubt with respect to the elevating element is not an irrational one based upon all the evidence that bears on the question, the jury's potential response may well provide a basis for the trial court to conclude that the defendant could rationally be found "guilty only" of the lesser-included offense. If so, then, upon request for the instruction by either party, the lesser-included offense has become "the law applicable to the case" for purposes of instructing the jury under the dictates of Article 36.14.

## V. APPLICATION OF LAW TO THE FACTS

I agree with the court of appeals that the jury in Appellant's case could rationally have rejected the State's evidence that he was a party to anything more than the kidnapping of the victims. In my view, the

state of the evidence was such that a jury could rationally have rejected the State's evidence to show he was a party to *capital* murder,[6] and still found him guilty of kidnapping or perhaps of felony murder with kidnapping as the predicate felony offense.

It is true that, circumstantially, it seems unlikely that the group would have kidnapped the victims in Baytown and transported them to the remote property in Anahuac belonging to Appellant's family—just to release them unharmed. But the primary evidence that the entire group shared the requisite intent to *kill* the victims came from the testimony of the admitted actual shooter, Brandon Flores.

Flores testified that the "plan" had not originally been to kill the victims, but when they reached the property, "[w]e decided we needed to kill them because they were gangsters." He explained that "we" entailed the whole group, including Appellant. He specifically denied, however, that Appellant had ever suggested *before* leaving Baytown that they "needed" to kill the victims.

---

[6] The indictment alleged three theories of capital murder: the murder of each victim in the course of kidnapping, and murder of more than one person during the same criminal transaction. TEX. PENAL CODE § 19.03(a)(2), (a)(7)(A). The jury charge authorized the jury to return one conviction based upon any one of these alternative theories. It also required the jury to find that Appellant caused the deaths "intentionally"—*not* knowingly—with respect to each of the three theories, even though Section 19.03(a)(7)(A) would authorize conviction based upon knowingly causing the death of more than one person in the same transaction. In addition, the jury charge authorized conviction under the theory of parties embraced by Section 7.02(a)(2) of the Penal Code, but *not* under the parties theory contained in Section 7.02(b). TEX. PENAL CODE § 7.02(a)(2), (b). Thus, the jury could find Appellant guilty as a party for soliciting, encouraging, aiding, etc., another actor in committing the killing, but not as a conspirator to commit the underlying kidnapping who "should have anticipated" the killings.

Flores purported at trial to be "not sure" who originally proposed killing the victims once they arrived in Anahuac, but he admitted that he was the one who, by himself, transported the victims to a remote section of the property and shot them in the head. He then claimed that it was Appellant who had told him to do so. This testimony, inconsistent though it was in certain aspects, was legally sufficient to implicate Appellant as a party to Flores's capital murder of the victims. But the jury had plenty of reason to discount at least aspects, if not much more, of Flores's testimony if it chose to, including his claim that Appellant told him to kill the victims.

The jury was instructed that Flores was an accomplice witness whose testimony was sufficiently suspect that it had to be corroborated before it could support Appellant's conviction.[7] Moreover, the jury learned that, after the killings, Flores fled to Mexico. He was not extradited until several years later, and only after assurances to the Government of Mexico that Texas would not seek the death penalty against him. Before Appellant's trial, Flores had worked out a deal with the State to testify against Appellant in exchange for the State's recommendation that he only serve two concurrent fifty-year sentences for murdering the two victims.

The jury also heard evidence that Flores gave a statement to police, after he was extradited, that was inconsistent with his trial

---

[7] *See* TEX. CODE CRIM. PROC. art. 38.14 ("A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.").

testimony in certain respects. Among those inconsistencies was that he told police that it had been another member of the group—Richard Gonzalez—who came up with the idea to kill the victims. *See Chavez*, 651 S.W.3d at 145 ("Flores testified inconsistently about who formulated the plan to kill complainants."). For this reason, and for the other reasons I have previously described, the jury might have rationally discounted or disbelieved, at least in part if not more, the testimony provided by Flores—and, in particular, any inference to be derived therefrom that Appellant shared the requisite intent to kill. The evidence with respect to that elevating element was far from conclusive.

## VI. CONCLUSION

On this state of the record, the jury might rationally have convicted Appellant of kidnapping or felony murder rather than the greater offense of capital murder. It might rationally have discounted Flores's claim that Appellant was involved in the decision to murder the victims. Accordingly, it could rationally have rejected the inference that he harbored an intent to kill the victims and convicted him of a lesser-included offense. On this basis, I agree with the court of appeals that Appellant was entitled to his requested lesser-included-offense instructions. I would affirm its judgment.[8]

I respectfully dissent.

**FILED:** April 19, 2023
**PUBLISH**

---

[8] The court of appeals concluded that the error in failing to submit the instructions was not harmless, *Chavez*, 651 S.W.3d at 146, and the State Prosecuting Attorney does not challenge that holding in its petition for discretionary review. The question of harm is therefore not before us.